**In re Ergie B. KERTENNIS, d/b/a Hillside Lounge Hillside House, Debtor.**

**Bankruptcy No. 8000333.**

United States Bankruptcy Court,
D. Rhode Island.

July 13, 1984.

Kathleen M. Lanphear, Providence, R.I., for the Small Business Admin.

Oscar M. David, Providence, R.I., for debtor.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

The United States Small Business Administration (SBA) has moved for relief

from the automatic stay and for leave to foreclose on collateral securing two notes. The collateral consists, mainly of real estate, and the central issues are whether there is equity in said real property, and, if so, whether the SBA's security interest is adequately protected.

The debtor, Ergie B. Kertennis, filed a Chapter 13 petition over four years ago, on May 14, 1980, and the SBA was scheduled as a secured creditor in the amount of $47,500. At that time the debtor was self-employed, and operated a restaurant and lounge, "Hillside House," at the premises on which the SBA holds its first security interest. The debtor's plan was confirmed on August 27, 1980, and from the beginning, she was never in compliance. Several hearings were held on motions by the trustee to dismiss or convert to Chapter 7, and on August 21, 1981, the Court, 13 B.R. 349, ordered that the "proceeding be converted to a case under Chapter 7." At the time, the Court noted that the debtor had been "blatantly evasive" at numerous hearings, and lacked "even a modicum of credibility." Nothing that has occurred since that time has caused the Court to alter these conclusions.

In bringing its motion for relief from the stay pursuant to 11 U.S.C. § 362(d), SBA asserts that the debtor has no equity in the property securing the loan, and that its interest is not adequately protected. The parties agree that although SBA also has a security interest in the debtor's "machinery, equipment, furniture and fixtures, these elements are a relatively minor part of the total appraisal of debtor's property." Debtor's Memorandum at 5. Accordingly, the evidence at trial focused primarily on the value of the real estate.

During the pendency of this case, Hillside House has lost its liquor license and is no longer operating. Joseph W. Accetta, the expert witness called by the debtor, testified that the highest and best use of the property is its former use as a restaurant, lounge, and single apartment. Applying the income approach to value, Accetta concluded that the market value of the subject real estate is $68,500. Accetta also thinks that the liquor license, if reinstated, would have a value of about $25,000, and he based this opinion, at least in part, on his being told by a clerk at the town hall in Foster, Rhode Island (where the subject property is located) that there are only six liquor licenses in the town, and that no more will be issued. Accetta further testified that the fixtures are worth $10,000, and that with good will included, the total value of the property as an operating business could reach $103,000.

The SBA's appraiser, Norman G. LaFrance, had originally concluded, in a written appraisal dated April 16, 1984 (Plaintiff's Exhibit A), that the subject property was worth $96,000 as an operating business with a liquor license. In that appraisal, LaFrance used the cost approach and assessed the property as a "fair quality Class 'D' restaurant facility." In its present condition, however, in which the business has lost its liquor license and is no longer operating, LaFrance testified that the highest and best use of the property was as residential real estate. Using the comparable sales method of valuation, he now estimates the market value to be $75,000. Because the debtor refused him access to the interior of the building, LaFrance did not appraise the equipment, nor did he have the benefit of knowing the condition of the property inside.

As one court noted in discussing the many variables that can influence the determination of equity, "[w]e deal here in likelihoods and probabilities," not "exactitude." *Vlahos v. Pitts (In re Pitts)*, 2 B.R. 476, 478 (Bankr.C.D.Cal.1979). In determining fair market value, "the court can only endeavor to make a reasonable estimate of value based upon expert testimony presented to it in court." *Whitinsville Savings Bank v. Grundstrom (In re Grundstrom)*, 14 B.R. 791, 793 (Bankr.D. Mass.1981). The case before the Court presents a difficult problem because the two expert witnesses used different methods of valuation, and came to distinctly different conclusions both as to the highest and best use of the property, and its mar-

ket value. Based upon all the evidence, including the speculative nature of the value of the liquor license (as appraised by the debtor's expert witness), the inherent weakness in SBA's appraisal which failed to include an interior inspection, and the notion that my guess is as good as theirs, the Court concludes that $85,000 reasonably represents the value of the subject property.

The amount of encumbrances is not in dispute, but the debtor does argue that postpetition interest and taxes should not be considered in determining whether the debtor has equity in the property. Although "there is some debate as to the operative date for making the necessary calculation of the amount of the claim entitled to adequate protection," *La Jolla Mortgage Fund v. Rancho El Cajon Associates*, 18 B.R. 283, 287 (Bankr.S.D.Cal. 1982), in this case four years have passed since the debtor filed her petition, and the delay is attributable exclusively to Ergie Kertennis. Accordingly, May 29, 1984, the date of the hearing on SBA's motion, will be used as the date for valuation of SBA's claim.

The parties stipulate that the total principal and interest currently owed to SBA on the two notes is $73,439.34. Because the Court finds, for reasons stated below, that there is a modest equity cushion in the property secured by the notes, postpetition interest continues to accrue on SBA's secured claim. 11 U.S.C. § 506(b). *See also* 3 Collier on Bankruptcy ¶ 502.-02[2] (15th ed. 1984) ("the payment of interest which accrues after the date of the petition is permitted when the security for the debt, *i.e.*, the collateral, is sufficient inasmuch as that collateral is security for the payment of interest as much as for the payment of the principal debt"). Thus, $73,439.34, the full amount of the principal and interest owed on the SBA notes, is the figure to be used in calculating the debtor's equity.

It is also agreed that the debtor owes $11,321.33 in local real estate taxes (including interest) on the property, but the parties disagree over the portion of this figure to be used in computing the debtor's equity. The equity cushion has been defined as "value in the property above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during the time the automatic stay remains in effect." *La Jolla Mortgage Fund v. Rancho El Cajon Associates*, 18 B.R. 283, 287 (Bankr.S.D.Cal.1982) (citation omitted). Taxes continue to accrue during bankruptcy and are part of the total encumbrances that must be considered in determining the existence and extent of the equity cushion. *See, e.g., Whitinsville Savings Bank v. Grundstrom (In re Grundstrom)*, 14 B.R. 791, 792–93 (Bankr.D.Mass.1981); *North East Federal Savings and Loan Ass'n v. Mikole Developers, Inc. (In re Mikole Developers, Inc.)*, 14 B.R. 524, 525 (Bankr.E.D. Pa.1981).

Postpetition interest on prepetition taxes, however, normally does not accrue. The First Circuit Court of Appeals has recently held that the various exceptions to the general prohibition against post-petition interest do not include prepetition tax liens. *In re Boston and Maine Corp.*, 719 F.2d 493, 497 (1st Cir.1983). On the facts before it, the Court of Appeals also denied interest on postpetition taxes. The Court agrees with SBA's contention that the *Boston and Maine* case is distinguishable from the proceeding at bar, and that on the facts of this case it would be appropriate to include interest on postpetition taxes in calculating the debtor's equity. The SBA, however, has failed to introduce evidence to establish either the amount of interest which has accrued on postpetition taxes, or the prepetition interest due on prepetition taxes.[1] It is clear

---

1. Section 362(g) of the Bankruptcy Code provides:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

from the stipulations of the parties and from the tax bills submitted by SBA (Exhibit B) that the total real estate taxes (excluding interest) amount to $8,405.60. Because SBA has failed to establish the interest due on prepetition taxes, none of the interest owed should be included in the calculation of the debtor's equity.

■■■ Based upon the market value of $85,000, the encumbrances of $73,439.34 owed the SBA, and taxes of $8,405.60 due the Town of Foster, the resulting equity—admittedly an estimate—is slightly more than $3,000. If foreclosure costs, stipulated to be $1,900, are deducted,[2] the tiny equity cushion is even less. This figure is so small, and the estimate of market value so imprecise, that it is quite possible that in fact there is no equity in the property.[3] Since SBA has the burden of showing that the debtor lacks equity in the property, the Court concludes that (technically, only) this burden has not been met, and that SBA cannot prevail under § 362(d)(2).[4] However, SBA also seeks relief from the stay "for cause, including the lack of adequate protection of an interest in property," § 362(d)(1), and on this issue the debtor has the burden of proof. Courts frequently find adequate protection when there is an equity cushion, *see Asquino v. Palmer River Realty, Inc. (In re Palmer River Realty, Inc.)*, 26 B.R. 138 (Bankr.D.R.I.1983), and cases cited therein, but if the equity cushion is small, or if other factors indicate that the creditor's security is at risk, courts

may conclude that the debtor has not provided adequate protection. *See, e.g., Ukrainian Savings and Loan Ass'n v. Trident Corp. (In re Trident Corp.)*, 19 B.R. 956, 958 (Bankr.E.D.Pa.1982) (10% equity cushion, eroding because of accruing interest and debtor's failure to make regular mortgage payments, insufficient to provide adequate protection); *In re Grundstrom, supra*, 14 B.R. at 793–95 (equity cushion of 23% fails to provide adequate protection where depreciation, interest charges, and possibility of catastrophic loss to underinsured property are present); *Sanders v. Tucker (In re Tucker)*, 5 B.R. 180, 183–84 (Bankr.S.D.N.Y.1980) (cushion of $6,500, or 7.4% of market value, inadequate where property is uninsured and cushion decreasing).

■■■ It is well established that "[t]he adequacy of the protection afforded by an equity cushion ... must ultimately be determined upon equitable considerations arising from the particular facts of each proceeding." *Id.* at 183. There are several factors in the instant proceeding which indicate that the minimal equity cushion (less than 4% of the market value of the property) fails to provide adequate protection to the SBA's interest. When the debtor last made payments to SBA in October 1980, there was an equity cushion, but she has spent the last four years using it up. One bankruptcy court held that the debtors' failure to make mortgage payments for a

---

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in the property; and
    (2) the party opposing such relief has the burden of proof on all other issues.
Thus, the SBA, which has requested relief from the stay, has the burden of proof with respect to the debtor's equity.

**2.** In addition to other encumbrances, bankruptcy courts frequently deduct foreclosure costs from market value in determining whether equity exists in property. *E.g., La Jolla Mortgage Fund v. Rancho El Cajon Associates*, 18 B.R. 283, 289 (Bankr.S.D.Cal.1982); *Whitinsville Savings Bank v. Grundstrom (In re Grundstrom)*, 14 B.R. 791, 792 (Bankr.D.Mass.1981); *Vlahos v. Pitts (In re Pitts)*, 2 B.R. 476, 478 (Bankr.C.D.Cal. 1979).

**3.** SBA has not submitted evidence which enables the Court to calculate either the prepetition interest due on prepetition taxes or the interest due on postpetition taxes. If these figures were available and included in the calculations, there would probably be no equity in the property.

**4.** Section 362(d)(2)(A) provides:
    (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
    . . . . .
    (2) with respect to a stay of an act against property if—
    (A) the debtor does not have an equity in such property. . . .

10-month period constituted "cause" for relief from the stay pursuant to § 362(d)(1). *Boulevard Mortgage Co. v. Hinkle (In re Hinkle)*, 14 B.R. 202, 204 (Bankr.E.D.Pa. 1981).

The debtor failed to appear at the hearing on the instant motion, and her attorney was unable to offer any evidence of additional adequate protection in her behalf. "[T]he debtor must affirmatively propose protection of the secured interest." *In re Saint Peter's School*, 16 B.R. 404, 410 (Bankr.S.D.N.Y.1982); *First Connecticut Small Business Investment Co. v. Clark Technical Associates (In re Clark Technical Associates)*, 9 B.R. 738, 741 (Bankr.D. Conn.1981).

There is no evidence that the property is insured, and no assurances have been provided that it will be insured. Furthermore, not only has the debtor failed to pay taxes on the real estate, but SBA was forced to make a commitment to the Town of Foster to pay the taxes in order to protect its interest.

"There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). From the beginning, the debtor's conduct borders on being an abuse of the legal system and, difficult as it may be to imagine, a harassment of SBA. Given the tortuous history of this case, it would clearly be inequitable to provide the debtor with yet another delay in this protracted proceeding. The debtor having failed to meet her burden of proof regarding adequate protection, the SBA's motion for relief from the automatic stay is granted pursuant to 11 U.S.C. § 362(d)(1).

The debtor represents that she has actively attempted to sell the subject property and has received offers, and the trustee has expressed an interest in contacting these alleged possible purchasers. Accordingly, the effect of this order is stayed until the trustee has had the opportunity to investigate the validity of these offers and to report to the Court regarding the feasibility of a prompt sale advantageous to SBA and other creditors. The debtor is ordered to cooperate with the trustee in this respect.

Enter judgment accordingly.