In re Charles H. CRAIG, Jr. and Gladys Craig, Debtors.

Bankruptcy No. 84–03223 T.

United States Bankruptcy Court, E.D. Pennsylvania.

June 24, 1985.

Alexander Henderson, III, Lancaster, Pa., for debtor.

Samuel G. Weiss, Jr., Lebanon, Pa., for the Federal Land Bank of Baltimore.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

The Federal Land Bank of Baltimore ("Bank") has filed, pursuant to section 362(d) of the Bankruptcy Code, 11 U.S.C. § 362(d), a motion for relief from the automatic stay so that it may foreclose upon the Chapter 11 debtors' real property located in Cecil County, Maryland. The debtors oppose the motion. For the following rea-

sons, we shall grant to the Bank its requested relief from the automatic stay.[1]

The Bank holds a first mortgage against the subject real property. The debtors have been in default of this mortgage obligation since April 1, 1984. As of February 13, 1985, the principal and accrued interest owed to the Bank by the debtors on the mortgage was $423,707.20. Since that time, interest has continued to accrue at the rate of approximately $4,345.00 per month. In addition to the Bank's mortgage lien, the Commonwealth National Bank holds two junior liens against the subject property. The debtors owe a total of approximately $424,000.00 on these two junior liens.

Both the Bank and the debtors offered appraisal testimony as to the fair market value of the subject property, which consists of approximately 264 acres of farm land, with some improvements thereon, located in Cecil County, Maryland. Also, the written appraisal reports of both the Bank's appraiser and the debtors' appraiser were admitted into evidence.

The Bank's appraiser resides in Cecil County, Maryland, within several miles of the subject property. He has been a licensed real estate broker in Maryland for about 20 years, specializing in farm land. Prior to that, he was a farmer in Cecil County. Since becoming a licensed real estate broker, he has sold and appraised a great many farm properties in Cecil County and elsewhere, and continues to do so. He is a Graduate of the Realtors Institute (G.R.I.). In addition, he is Vice President of the Cecil County Appraisal Society and is a member of the National Association of Real Estate Boards, the Cecil County Board of Realtors, and the Maryland Farm and Land Institute. Also, he has completed appraisal courses given by the Maryland Farm and Land Institute and the National Association of Realtors.

The debtors' appraiser is a licensed real estate broker in Pennsylvania. Since January, 1977, he has been self-employed as a private fee appraiser and farm appraisal consultant in southeastern Pennsylvania. He has had approximately 25 years of farm appraisal experience in southeastern Pennsylvania, having performed a great many farm appraisals. The debtors' appraiser is not licensed to sell real estate in Maryland and has never done so. The present appraisal is the first he has ever performed in Cecil County, Maryland and, apparently, he has never performed any previous appraisals anywhere in Maryland. He is not a member of any real estate or appraisal organization and has no professional designations, degrees, or qualifications with regard to appraising real estate.

Both appraisers agreed that the highest and best use of the subject property is its current use as farm land. They also agreed that the market data approach utilizing sales of comparable properties in the area was the proper method for estimating the fair market value of the subject property. Using this approach, the Bank's appraiser arrived at a fair market value of $430,000.00 while the debtors' appraiser arrived at a fair market value of $543,000.00.

■ For the following reasons, we agree with the Bank's appraiser that the subject property has a fair market value of $430,000.00. First, we find the testimony of the Bank's appraiser to be better reasoned and more convincing than that of the debtors' appraiser with regard to the relationship between the various comparable sale properties and the subject property. Second, the most recent comparable sale cited by the debtors' appraiser occurred in December, 1983, while the Bank's appraiser cited two comparable sales as recent as January, 1985 and February, 1985, respectively. Third, the aforementioned appraisal qualifications of the Bank's appraiser are vastly superior to those of the debtors' appraiser. Finally, and not least importantly, we are very impressed with the Bank's appraiser's intimate familiarity with the farm real estate market of the locale of the subject

---

**1.** This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

property, as evidenced by both his testimony and his resume. Such familiarity is in marked contrast with the fact that the debtors' appraiser had never previously appraised nor sold any real estate in Maryland.

The main issue in this matter is whether, pursuant to 11 U.S.C. § 362(d)(1), the Bank's interest in the subject property is adequately protected by the debtors' alleged equity cushion in the property. Equity cushion has been defined as "the surplus of value remaining after the amount of indebtedness is subtracted from the fair market value of the collateral." *Commonwealth of Pennsylvania State Employees' Retirement Fund v. Roane*, 14 B.R. 542, 545 (D.C.E.D.Pa.1981). Liens junior to those of the movant for stay relief are not considered in calculating the amount of indebtedness for equity cushion purposes. *See In re Mellor*, 734 F.2d 1396 (9th Cir. 1984).

We find that the equity cushion of $6,292.80 ($430,000.00 minus $423,707.20) which existed as of February 13, 1985 was clearly insufficient to protect the Bank's interest in the subject property. Furthermore, the accrued interest of approximately $4,345.00 per month since that time has already more than eliminated even that very slim equity cushion. Therefore, we conclude that there is no equity cushion from which the Bank's interest might be adequately protected, without even considering the possibility of assessing the Bank's likely foreclosure costs against the fair market value of the subject property. *See In re Kertennis*, 40 B.R. 895, 899 (Bankr.D.R.I.1984), and cases cited therein.

The debtors appear to argue, in the alternative, that the Bank's interest in the subject property is adequately protected by the debtors' hopes of having the property residentially subdivided. Debtors would then offer the property to a developer in subdivided form, with the sale price, minus subdivision costs, being more than sufficient to pay off their debt to the Bank at the time of sale. For the following reasons, we find that the debtors' subdivision proposal does not adequately protect the Bank's interest in the subject property. First, the debtors, who have the burden of proof on this issue (11 U.S.C. § 362(g)), simply have not produced sufficient evidence to show that a successful subdivision is a reasonably strong possibility. At this time, we find their proposal to be tenuous and speculative. *See In re A.Z.J.Z., Inc.*, 22 B.R. 966, 968 (Bankr.E.D.Pa.1982). Second, even the debtors' evidence indicates that their subdivision proposal would take close to twelve months to complete, during which time the Bank would presumably continue to receive no money from the debtors. Third, even the debtors' own appraiser does not believe that the subject property should be subdivided for residential development at the present time. Fourth, the debtors admit, at page 18 of their brief, that further studies would be necessary in order to ascertain whether or not there is sufficient demand in the area for the type of residential development which their proposal envisions. Finally, the Bank's appraiser testified convincingly that, for various reasons, the demand in the locale of the subject property is almost nil for the type of residential development which the debtors' proposal envisions.

For all of the foregoing reasons, we shall grant stay relief to the Bank under 11 U.S.C. § 362(d)(1) so that it may foreclose upon the subject property.[2]

---

2. We also note, although not today relying hereon, that the debtors have not made any monthly mortgage payments to the Bank in more than a year. Such lack of payments can, under some circumstances, constitute "cause" for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1). *See In re Three Tuns, Inc.*, 35 B.R. 110 (Bankr.E.D.Pa.1983); *In re Galbraith*, 19 B.R. 563 (Bankr.E.D.Pa.1982); *In re A.Z.J.Z., Inc., supra.*