**In re Ida HYNSON, Debtor.**

**Bankruptcy No. 85–06622.**

United States Bankruptcy Court, D. New Jersey.

July 29, 1986.

David P. Daniels, Camden, N.J., for debtor.

Robert M. Wood, Manasquan, N.J., Standing Trustee.

William M.E. Powers, Jr., Medford, N.J., for Norwest Financial New Jersey, Inc., Numerica Financial Services, Inc. and The New York Guardian Mortgagee Corp.

Alvin D. Miller, Cherry Hill, N.J., for Fidelity Bond and Mortg. Corp. and Fleet Real Estate Funding Corp.

Zucker, Goldberg, Becker & Ackerman by Michael S. Ackerman, Maplewood, N.J., for Commonwealth Eastern Mortg. Corp.

John D. Wilson, Camden, N.J., for Fidelity Bond and Mortg. Corp.

Williams, Caliri, Miller & Otley by Jeffrey W. Pompeo, Wayne, N.J., for Anchor Sav. Bank and Anchor Mortg. Services, Inc.

William S. Halsch, Deputy U.S. Atty., for U.S. Acting through the Farmers Home Admin., U.S. Dept. of Agriculture.

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

The matter before this court involves the confirmation of the Chapter 13 plan proposed by the debtor, Ida Hynson. By her plan, the debtor proposes to modify the interest of Norwest Financial New Jersey, Inc. (Norwest Financial), the holder of a second mortgage on the debtor's residence which is located at 125 N. 26th Street, Camden, New Jersey. For the reasons set forth in the opinion to follow, this court denies the confirmation of the debtor's plan. This decision is based upon the court's finding that the plan violates the provisions of 11 U.S.C. § 1322(b)(2) in that it impermissibly modifies the rights of a holder of a secured claim, whose claim is secured only by a security interest in real property that is the debtor's principal residence.[1]

The relevant facts of this case are as follows. On December 12, 1985, the debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. On that same date, the debtor filed a Chapter 13 plan which provided for monthly payments of $160.00 to be made by the debtor to the Standing Trustee[2] for a period of forty-eight months. The plan provided that Marathon Mortgage Corporation, the holder of a first mortgage on the debtor's residence, would receive the sum of $1,016.00 which was estimated to be the amount necessary to cure the defaults under its mortgage through December 1985. The plan also provided for regular monthly payments to be made by the debtor to Marathon Mortgage Corporation outside of the Chapter 13 plan. The Chapter 13 plan further provided that Norwest Financial, the holder of the second mortgage on the debtor's real property would receive no dividends pursuant to 11 U.S.C. § 1325(a)(5)(B)(i) and (ii). The debtor asserted in her plan and in her bankruptcy schedules that the property has

---

1. This case was decided along with several other Chapter 13 cases involving substantially similar issues. Accordingly, counsel for various parties in interest appeared before the court and were heard on the legal issues involved herein.

2. The Chapter 13 Standing Trustee is appointed by the United States Trustee for the Districts of Delaware and New Jersey pursuant to 28 U.S.C. § 586(b). The United States Trustee supervises the administration of cases and trustees in cases under chapters 7, 11 and 13 of title 11 of the United States Code. 28 U.S.C. § 586(a)(3). The Chapter 13 Standing Trustee is charged under 11 U.S.C. § 151302 with performing duties specified under 11 U.S.C. § 704, including: accounting for property received; ensuring that the debtor performs his or her intention regarding the retention or surrender of secured property; investigating the financial affairs of the debtor; examining proofs of claims; objecting to allowance of claims; opposing the discharge of a debtor, if advisable; furnishing such information concerning the estate of the debtor as is requested by a party in interest; preparing and filing a final report and final account of the administration of the estate, and; appearing at hearings concerning the value of secured property, confirmation of a plan and modification of a plan after confirmation.

a present market value of $23,000.00, and that the first mortgage on the property and the cost of sale exceed the property's value. Therefore, the debtor concludes that the second mortgage is unsecured and void under 11 U.S.C. § 506(a) and (d).[3] The balance of the Chapter 13 plan provided for payment of $3,485.00 to Howard Savings Bank, the holder of a security interest in a 1979 Lincoln Versailles. Of the aforesaid sum of $3,485.00, $3,000.00 represented the debtor's estimate of the value of the vehicle and $485.00 represented interest pursuant to the cram-down provision of 11 U.S.C. § 1325(a)(5)(B)(i) and (ii). The Chapter 13 plan also provided for payment to the City of Camden in the sum of $180.00 on account of sewer charges, and for a 10% dividend to be paid to unsecured creditors.

At the confirmation hearing conducted before this court on March 19, 1986, counsel for the debtor stipulated that Norwest Financial is the holder of a claim secured only by a security interest in real estate that is the debtor's principal residence.

This court is faced with the interplay of several statutory provisions of the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Bankruptcy Code). Section 506 of the Bankruptcy Code provides:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

> > (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

> > (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

With regard to a Chapter 13 plan's treatment of holders of secured claims, 11 U.S.C. § 1322(b) of the Bankruptcy Code provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may—

> > (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt

---

3. On March 7, 1986 Marathon Mortgage Corporation filed a Proof of Claim with this court asserting that the total amount due on the mortgage it holds was $23,138.26. Marathon Mortgage Corporation also asserted that it was owed the sum of $1,206.12 for attorneys' fees, costs, delinquency charges and interest on same, through December 1985. Norwest Financial filed two separate Proofs of Claim with this court on January 22, 1986 and February 26, 1986, asserting that the sum of $2,825.22 was due to it as of the date of the filing of the bankruptcy petition, which debt was secured by a second mortgage on the debtor's real property.

of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

(6) provide for the payment of all or any part of any claim allowed under section 1305 of this title;

(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;

(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor;

(9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity; and

(10) include any other appropriate provision not inconsistent with this title.

Title 11 U.S.C. § 1325 also provides in relevant part:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder.

It is clear that 11 U.S.C. § 506 establishes the extent to which a claim is a "secured claim" for bankruptcy purposes. Whether a claim is a "secured claim" is dependent upon the value of the collateral. If the value of the collateral is greater than the amount of the debt, the claim is oversecured. Pursuant to 11 U.S.C. § 506(b), holders of oversecured claims may recover out of the collateral, postpetition interest and reasonable fees, charges and costs provided for in the contract which is the basis of the claim. *See, In re Simpkins*, 16 B.R. 956, 965 (Bkrtcy.E.D.Tenn.1982).

On the other hand, 11 U.S.C. § 1322(b)(2) provides that a Chapter 13 plan may not modify the right of the holder of a claim which is secured only by a security interest in real property that is the debtor's principal residence:

In reconciling these two statutory sections, it must be noted that 11 U.S.C. § 506 is a provision of general applicability in cases under Chapters 7, 11 and 13 of the Bankruptcy Code. *See*, 11 U.S.C. § 103(a). On the other hand, 11 U.S.C. § 1322 applies only in cases under Chapter 13. *See*, 11 U.S.C. § 103(h). This court accepts the tenet of statutory construction which provides that regardless of the inclusiveness of the general language of a statute, it does not apply or prevail over matters specifically dealt with in another part of the same enactment. *See, Maiatico v. United States*, 302 F.2d 880, 886 (D.C.Cir.1962); *In*

*re Brown,* 329 F.Supp. 422, 425 (S.D.Iowa 1971). Accordingly, while courts have recognized the general applicability of 11 U.S.C. § 506 in bankruptcy cases, its applicability has been limited where more specific statutory provisions apply, or where such application is inconsistent with the policy of the Bankruptcy Code.

In the case of *In re Mahaner,* 34 B.R. 308 (Bkrtcy.W.D.N.Y.1983), Marine Midland Bank, N.A., a secured creditor in a Chapter 7 proceeding sought relief from the automatic stay under 11 U.S.C. § 362 in order to proceed against certain property of the debtors. The debtors, in response to the Bank's motion, sought a valuation of the real property in question under 11 U.S.C. § 506 in order to pay off the secured interest held by Marine National Bank in the subject property and to redeem the property to the extent of Marine National Bank's lien. The *In re Mahaner* court held that 11 U.S.C. § 506 could not be utilized by the debtors to avoid the Bank's mortgage lien in a Chapter 7 case. The court reasoned that if 11 U.S.C. § 506 could be employed in a Chapter 7 proceeding, 11 U.S.C. § 722, which deals with the redemption of personal property in a Chapter 7 case, would be rendered mere surplusage. 34 B.R. at 309. The *In re Mahaner* court further noted that 11 U.S.C. § 722 is more specific on the issue of redemption than is 11 U.S.C. § 506. The court concluded that such specific statutory provisions prevail over ambiguous or inconsistent general statutory provisions. 34 B.R. at 309. Finally, the *In re Mahaner* court determined that it is not good policy to permit a Chapter 7 debtor to avoid a mortgage lien while a Chapter 11 or Chapter 13 debtor would be unable to avoid a mortgage lien under the same circumstances. To permit such a result would be to discourage the utilization of the rehabilitative sections, Chapter 11 and Chapter 13, which contemplate at least some repayment to unsecured creditors. In a Chapter 13 bankruptcy proceeding, 11 U.S.C. § 1322(b)(2) prohibits a debtor from modifying a mortgage on its principal residence where the claimant holds no other security. Furthermore, other liens

would be kept intact pursuant to 11 U.S.C. § 1325(a)(5)(B). Likewise, under 11 U.S.C. § 1111(b)(2), a secured creditor may make an election which results, under 11 U.S.C. § 1129(a)(7)(B) and (b)(2)(A), in the lien remaining in effect in the full amount. 34 B.R. at 309. The *In re Mahaner* court concluded that the specific provisions of 11 U.S.C. § 1322(b)(2) and 11 U.S.C. § 1129(a)(7)(B) and (b)(2)(A) supersede the general provisions of 11 U.S.C. § 506 which are inconsistent. 34 B.R. at 309.

In the case of *In re Simpkins,* 16 B.R. 956 (Bkrtcy.E.D.Tenn.1982), the court dealt with the interplay between 11 U.S.C. § 506 and 11 U.S.C. § 1322(b). In that case, the debtors, in their Chapter 13 plan, proposed to pay all of their creditors in full, with the exception of the payment of attorney's fees which were added to unsecured claims. A bank, to which the debtors were indebted under three promissory notes, objected to the confirmation of the debtors' Chapter 13 plan. Two of the promissory notes executed by the debtors to the bank, a second mortgage note and a 90–day note, were secured only by a second mortgage on real estate which was the debtor's principal residence.

The bank in the *In re Simpkins* case, asserted numerous objections to the confirmation of the debtors' plan. One of the bank's objections was that the last payment on the second mortgage note may have been due before the last payment under the plan. The bank asserted that, under 11 U.S.C. § 1322(b)(2), its rights could not be modified, except as allowed by 11 U.S.C. § 1322(b)(5), which allows the during of defaults and the maintenance of regular payments only if the last payment is due after the last payment under the plan. 16 B.R. at 961.

Judge Ralph H. Kelley, writing for the *In re Simpkins* court, established that while acceleration may affect the right to cure a default, 11 U.S.C. § 1322(b)(5) should not be employed to deny a debtor's right to cure a default. 16 B.R. at 961. Relying upon an extensive analysis of rele-

vant legislative history, Judge Kelley held that the Bankruptcy Code allows a debtor to cure defaults on a note for which the final payment was due before the final payment under the Chapter 13 plan. 16 B.R. at 961–963. Additionally, the *In re Simpkins* court determined that curing defaults and maintaining regular payments on a claim which is secured only by the residence of the debtor does not modify a claimant's rights in violation of 11 U.S.C. § 1322(b)(2). 16 B.R. at 963. *See also, In re McSorley*, 24 B.R. 795, 798 (Bkrtcy.D.N.J.1982).

In *In re McSorley*, 24 B.R. 795 (Bkrtcy.D.N.J.1982), Judge William Lipkin, formerly of this Court, considered whether the rights of an assignee of a second mortgage had been modified under 11 U.S.C. § 1322(b)(2). Judge Lipkin held that the second mortgagee was not entitled to relief from the automatic stay in order to enforce its mortgage lien, since the final payment under the note held by the second mortgagee was due before the debtors commenced their bankruptcy case. Judge Lipkin found that the second mortgagee's rights were not modified under 11 U.S.C. § 1322(b)(2) since under the debtors' confirmed Chapter 13 plan, the creditor in *In re McSorley* was going to receive 100 percent of the money due to it plus accruing interest up to the time of payment. The court in *In re McSorley* relied upon the case of *In re Simpkins*, 16 B.R. 956 (Bkrtcy.E.D.Tenn.1982), in stating:

> the protection of section 1322(b)(2) was intended to prevent the application of the 'cramdown' provision of the Bankruptcy Code to the holder of a claim secured solely by residential real estate. [citation omitted] It was not intended to be applied to situations like the present plan so as to work an injustice on the debtors' attempt to keep their home. The Second Circuit has recently agreed with this interpretation and stated: '... we believe that the power to 'cure any default' granted in § 1322(b)(3) and (b)(5) is not limited by the ban against 'modifying' home mortgages in § 1322(b)(2) because we do not read 'curing defaults' under

(b)(3) or 'curing defaults and maintaining payments' under (b)(5) to be modifications of claims.' *In re Taddeo*, 685 F.2d 24, 9 B.C.D. 556, 559 (2 Cir.1982). In that case the court held that debtors could cure defaults and de-accelerate their secured long-term residential debt which had been accelerated under the terms of their agreement, prior to the filing of the Chapter 13 Petition.

24 B.R. at 798.

Similarly, the Second Circuit Court of Appeals in the matter of *In re Taddeo*, 685 F.2d 24 (2d Cir.1982), permitted debtors in a Chapter 13 case to cure defaults under a purchase money mortgage and to continue making monthly mortgage payments, despite the mortgagee's prepetition acceleration of the mortgage. The *In re Taddeo* court reasoned that the power to cure mortgage arrears granted to debtors under 11 U.S.C. § 1322(b) includes the power to "de-accelerate" the mortgage and reinstate its original payment schedule. 685 F.2d at 26. The *In re Taddeo* court further determined that the power to cure any default granted by Sections 11 U.S.C. § 1322(b)(3) and (b)(5) is not restricted by 11 U.S.C. § 1322(b)(2), which forbids the modification of security interests in a debtor's principal residence. The *In re Taddeo* court reasoned that curing defaults under 11 U.S.C. § 1322(b)(3) and curing defaults and maintaining payments under 11 U.S.C. § 1322(b)(5) are not modifications of claims. 685 F.2d at 27.

The *In re Simpkins* court, while recognizing the right to cure, also recognized that 11 U.S.C. § 1322(b)(2) prevents the application of the cram-down provision of 11 U.S.C. § 1325(a)(5)(B) to holders of claims secured only by residential real estate. 16 B.R. at 963. *See also, In re Taddeo*, 685 F.2d 24, 27–28 (2d Cir.1982); *First Financial Savings & Loan Association v. Winkler*, 29 B.R. 771, 775–776 (N.D.Ill.1983); *In re Ivory*, 32 B.R. 788, 793 (Bkrtcy.D.Or.1983); *In re McSorley*, 24 B.R. 795, 798 (Bkrtcy.D.N.J.1982); *United Companies Financial Corporation v. Brantley*, 6 B.R. 178, 189 (Bkrtcy.N D.Fla.

1980); *Matter of Sulzer,* 2 B.R. 630, 636 (Bkrtcy.S.D.N.Y.1980).

The *In re Simpkins* court recognized that while 11 U.S.C. § 506 determines the extent to which a claim is a secured or an unsecured claim, it does not necessarily affect the right to receive payment on a claim. The court in *In re Simpkins* specifically stated, "though § 1322(b)(2) deals with the 'rights of the holder of a claim,' the emphasis should be on 'claim.' A claim is a right to payment." 16 B.R. at 963 (citing 11 U.S.C. § 101(4)(A)). The *In re Simpkins* court recognized that 11 U.S.C. § 1322(b)(2) preserves the right of a holder of a claim, secured only by a security interest in the debtor's principal residence, to receive regular monthly mortgage payments as provided for in the contract which was the basis of the claim. 16 B.R. at 965. The *In re Simpkins* court also established that 11 U.S.C. § 1322(b)(2) preserves a creditor's right to collect other charges provided for in the contract. The court stated:

> Obviously, § 506(b) does not affect the right to receive the regular payments. The court believes it does not affect the right to recover the other charges, costs, interest after maturity on defaulted payments, and attorney's fees provided for by the contract. If the main purpose of § 1322(b)(2) is to preserve payment rights, then it should also preserve these. Section 506 does not determine the right to payment, but only whether the claim is secured or unsecured. Chapter 13 may require full payment of some unsecured claims. Priority claims are another example.

16 B.R. at 965.

This court agrees with the analysis of 11 U.S.C. § 1322(b)(2) contained in the *In re Simpkins* opinion. To apply the cramdown provisions of 11 U.S.C. § 506 to creditors whose claims are secured solely by the debtor's principal residence, would in large part vitiate the protections of 11 U.S.C. § 1322(b)(2). It would also be at odds with the clear intent of Congress to protect a lender's security when a lender is secured only by a security interest in a Chapter 13 debtor's home.

The Congressional history of 11 U.S.C. § 1322(b)(2) provides:

> Section 1322(b)(2) of the House Amendment represents a compromise agreement between similar provisions in the House bill and Senate amendment. Under the House amendment, the plan may modify the rights of holders of secured claims other than a claim secured by a security interest in real property that is the debtor's principal residence. It is intended that a claim secured by the debtor's principal residence may be treated with under section 1322(b)(5) of the House amendment.

16 B.R. at 963 (quoting 124 Cong.Rec. § 17,424 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini); 124 Cong.Rec. H11, 106–11,107 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards)).

This court has examined the cases relied upon by the debtor in her brief in support of the confirmation of the Chapter 13 plan. This court finds that the cases of *In re Tanner,* 14 B.R. 933 (Bkrtcy.W.D.Pa.1981) and *In re Bracken,* 35 B.R. 84 (Bkrtcy.E.D. Pa.1983), are inapplicable to the case at bar since they involve Chapter 7 proceedings.

The debtor also relied upon the case of *In re Everett,* 48 B.R. 618 (Bkrtcy.E.D.Pa. 1985). In that case, the court held that, pursuant to 11 U.S.C. § 506(a) and (d), a Chapter 13 debtor may avoid a mortgage on a parcel of real estate to the extent that the amount of the mortgage on the real property exceeds the value of the property. That case is distinguishable from the matter presently before the court for the following reasons: (1) the *In re Everett* court did not indicate whether the property at issue was the principal residence of the debtor; (2) the *In re Everett* court did not make a finding that the creditor at issue had a security interest solely in the real estate in question, and; (3) it is not clear that 11 U.S.C. § 1322(b)(2) was at issue in the *In re Everett* case. Instead, the *In re Everett* opinion focused upon the issue of lien avoidance under 11 U.S.C. § 506(d).

The debtor also relied upon the case of *In re Cosby*, 33 B.R. 947 (Bkrtcy.E.D.Pa. 1983). In *In re Cosby*, Chapter 13 debtors sought to have a second and third mortgage lien declared unsecured under 11 U.S.C. § 506(a). The *In re Cosby* case is not relevant to the court's decision in the instant matter since *In re Cosby* did not involve a discussion of 11 U.S.C. § 1322(b)(2), and, in fact, the sole issue before the court in that case was the fair market value of the debtors' residence. 33 B.R. at 948.

Finally, the debtor relied upon the case of *In re Spadel*, 28 B.R. 537 (Bkrtcy.E.D. Pa.1983). In *In re Spadel*, Chapter 13 debtors sought by complaint to avoid the mortgage lien of a third mortgagee. The *In re Spadel* court held that since there was no equity in the residence in excess of the first two mortgages, the third mortgagee's claim was unsecured. 28 B.R. at 539. Furthermore, the *In re Spadel* court held that the lien of the third mortgagee was not avoidable under § 506(d), but rather passed through the bankruptcy proceeding unaffected where there was no determination of the allowability of the claim under 11 U.S.C. § 502. 28 B.R. at 539. The *In re Spadel* court examined the effect of 11 U.S.C. § 1322(b)(2) on the ability of a debtor to modify a mortgagee's rights. The court took the position that:

> While HCDC [the secured creditor] may possess 'a claim secured only by a security interest in real property that is the debtors' principal residence,' it is not the holder of a 'secured claim' by virtue of § 506(a) of the Code, and, therefore, the exception set forth in § 1322(b)(2) does not apply to HCDC.

28 B.R. at 540.

This court disagrees with the analysis of 11 U.S.C. § 1322(b)(2) contained in *In re Spadel*. The concept that only a "secured claim" and not an "unsecured claim" of a mortgagee is protected within the ambit of 11 U.S.C. § 1322(b)(2), carries the syntax of the Bankruptcy Code to an absurd conclusion which is at odds with the general principles of statutory construction and with the clear legislative intent of 11 U.S.C. § 1322(b)(2). This court notes that 11 U.S.C. § 1322(b)(2) protects "a claim secured only by a security interest in real property that is the debtor's principal residence." The language of 11 U.S.C. § 1322(b)(2) does not specifically limit its protection to a *secured* claim secured only by a security interest in such real property. As noted by the court in the case of *In re Simpkins*, the emphasis in determining the applicability of 11 U.S.C. § 1322(b)(2) should be on the existence of a claim, which is a right to payment. 16 B.R. at 963. Certain rights to payment were created by the enactment of 11 U.S.C. § 1322(b)(2), which this court will not disturb by the general application of 11 U.S.C. § 506.

This court finds that the Chapter 13 plan proposed by the debtor herein impermissibly modifies the rights of Norwest Financial in violation of 11 U.S.C. § 1322(b)(2). Accordingly, confirmation of the debtor's Chapter 13 plan is denied.

An order consistent with this opinion was entered by the Court on April 3, 1986.