In re Rafael FIGUEROA RUIZ and, Ana Margarita Rivera Hernaiz, Debtors.

ROYAL BANK de PUERTO RICO, Movant,

v.

Rafael FIGUEROA RUIZ and Ana Margarita Rivera Hernaiz, Debtors; Diego Ferrer, Trustee, Respondents.

Civ. No. 89–1822(PG).

United States District Court, D. Puerto Rico.

Nov. 14, 1990.

---

Richard A. Lee, San Juan, Puerto Rico, for trustee.

Jorge Souss, Hato Rey, Puerto Rico, for debtors.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

A final hearing on Royal Bank de Puerto Rico's ("the Bank") motion for relief from stay was held on October 17, 1990. Two issues were discussed at said hearing, to wit: the balance of the second mortgage held by Banco Comercial de Mayaguez, and the matter of the attachment lien. A statement of the outstanding debt to Banco Comercial de Mayaguez was submitted. The Bank argued that due to the balance of the second mortgage the issue of the attachment lien becomes moot for there is no equity in the property, or if there is any left, it would disappear in two or three months. The trustee alleged that the attachment lien of $60,000 in favor of Banco Nacional, N.A.[1] is subject to a judicial action before the Court, adversary proceeding 89–87. In said proceeding debtors request the voidance of the attachment arguing that it was made on April 13, 1990, within ninety days prior to debtors' bankruptcy petition and, therefore, is a voidable preference petition under 11 U.S.C. § 544 or 547.

---

1. The attachment lien was obtained by Banco Nacional, N.A., in a civil action filed by Banco Nacional against Anamar Carolina, Inc., for collection of monies and foreclosure of pledge agreement, Civil Case No. 89-0318(JP). In order to recover the possession of debtors' tangible personal goods seized pursuant to the order of attachment debtors posted a bond in the amount of $71,000.00. The adversary proceeding 89–87 was brought to void the attachment in Civil No. 89–0318 and to request the relief of the money posted as bond. Civil No. 89–0318 was dismissed and has been appealed. Adversary proceeding 89–87 has been stayed until a final order is entered by the Court of Appeals in case No. 89–0318.

■ A *prima facie* case of a preference with respect to the attachment lien has been presented by the trustee. The Court is convinced that the attachment lien may well be voidable under 11 U.S.C. § 544 and, therefore, should not be considered as an encumbrance for purposes of the Bank's motion to lift stay only. *See In re First National Barnstable Corp.*, 108 B.R. 372, 377 (Bkrtcy.D.Mass.1989).

■ Another issue raised by the trustee was whether the amount stipulated in the mortgage contract to cover attorney's fees in the event of foreclosure or other judicial action is to be included as part of the secured debt for purposes of determining equity within the meaning of 11 U.S.C. § 362(d)(2)(A). The trustee's position is that it should not be included. The Bank, on the contrary, contends that the mortgage's 10% provision for attorney's fees is to be added to the secured debt.

At the hearing the parties were granted until October 19, 1990, to submit the citations in support of their theories. On October 17, 1990, the Bank filed a motion submitting only one citation, *In re Intaco Puerto Rico, Inc.*, 357 F.Supp. 1122 (P.R. 1973). The trustee filed a motion on October 19, 1990, wherein he alleges that section 506(b) of the Bankruptcy Code is dispositive of the issue.[2] He includes various citations in support of the proposition that:

> Even when the security stipulates the amount to cover costs, expenses and attorneys' fees, the agreement is limited by the reasonableness requirement of 506(b), which is a matter of federal bankruptcy law and which the Court alone must determine expost upon proof which satisfies the usual guidelines for awarding attorney's fees under the Bankruptcy Code. Since the mortgagee has no vest-

ed right to an amount fixed a priori, said amount is not a part of its secured interest for purposes of a § 362(d)(2)(A) determination.

The Bankruptcy Code changed the law applicable to attorney's fees of secured creditors.[3] Section 506(b)[4] of the Code specifically provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this action, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The report of the Senate Committee of the Judiciary relating to section 506(b) indicates that:

> Subsection (b) codifies current law by entitling a creditor with an oversecured claim to any reasonable fees (including attorney's fees), costs or charges provided under the agreement under which the claim arose. These fees, costs, and charges are secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim.

*In re Manchester Lakes Associates*, 117 B.R. 221 (Bkrtcy.E.D.Va.1990), *quoting*, S.Rep. No. 989, 95th Cong., 2nd Sess. 68, reprinted in 1978 U.S. Code Cong. & Adm. News 5787, 5854. *See also, United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

■ This Court concludes that section 506(b) controls. To collect attorney's fees three requirements must be met: (1) the underlying agreement must provide for fees; (2) the value of the collateral must

---

**2.** On October 26, 1990, the Bank filed a "Motion to Strike Trustee's Brief" and the trustee filed comments to the Bank's motion. The Bank's motion shall be denied for both parties were granted time to submit citations as to the issue of whether attorney's fees should be included as part of the secured debt for purposes of determining equity.

**3.** Although the case of *In re Intaco Puerto Rico, Inc., supra,* is under the former Bankruptcy Act,

the Court therein held that attorney's fees to be paid pursuant to the terms of a loan agreement shall meet the reasonableness test.

**4.** Section 506 is a provision of general applicability in cases under Chapters 7, 11 and 13 of the Bankruptcy Code. *In re Hynson,* 66 B.R. 246, 249 (Bkrtcy.D.N.J.1986). *See* 11 U.S.C. § 103(a).

exceed the amount of the debt; and (3) the fees requested must be reasonable. *In re Reposa*, 94 B.R. 257, 260 (Bkrtcy.D.R.I. 1988). In making the determination of reasonableness, bankruptcy courts in the First Circuit are required to consider the criteria outlined in *King v. Greenblatt*, 560 F.2d 1024 (1st Cir.1977), and to apply these factors according to the "lodestar" approach. *In re Reposa*, 94 B.R. at 260. Therefore, in the case at bar, at this stage of the proceedings the mortgage's 10% provision for attorney's fees cannot be added to the Bank's secured debt for determining equity within the meaning of section 362(d)(2)(A).

### Value of the Collateral

■ In our previous opinion and order the Court had preliminarily held that the value of the real estate property was $600,000 based upon an appraisal opinion of value submitted by the Bank as Exhibit E to their motion to lift stay and admitted by the trustee in his answer to the Bank's motion. However, the trustee presented expert testimony to prove that the appraisal value of the property was $643,000.[5] The Bank did not raise any objection to the expert's testimony. In determining fair market value, "the court can only endeavor to make a reasonable estimate of value based upon expert testimony presented to it in court." *In re Kertennis*, 40 B.R. 895, 897 (Bkrtcy.D.R.I.1984), *quoting, Whitinsville Savings Bank v. Grundstrom*, 14 B.R. 791, 793 (Bankr.D.Mass.1981).

The Court finds that the $643,000 value attributed to the property by Mr. Canino is a fair evaluation.

This value of $643,000 must be reduced by an amount sufficient to cover the usual costs of foreclosure and sale. The Court must deduct a sufficient sum to assure that

the usual costs incurred in foreclosure and sale will not compromise the allowed secured claim. *La Jolla Mortg. Fund v. Rancho El Cajón Associates*, 18 B.R. 283, 289 (Bkrtcy.S.D.Cal.1982). *See also In re Kertennis*, 40 B.R. at 899 n. 2 (Bkrtcy.D.R. I.1984); *Whitinsville Savings Bank v. Grundstrom, supra; In re Kinseth*, 10 B.R. 823, 825 n. 2 (Bkrtcy.S.D.Cal.1981); *In re Dallsta*, 7 B.R. 883, 885 (Bkrtcy.E.D.Pa. 1980); *In re Pitts*, 2 B.R. 476, 478 (Bkrtcy. C.D.Cal.1979).

According to the Office of the U.S. Trustee, a realistic estimate to cover foreclosure and sale costs would be to deduct from the fair market value of the property a 6% brokerage and a 9% notarial fee, leaving a net value of $597,990. *La Jolla Mortg. Fund v. Ranch El Cajón Associates, supra.*

### Secured Indebtedness

The total secured indebtedness of the Bank, as of October 17, 1990, is determined as follows:

| | |
|---|---|
| Principal | $255,143.02 |
| Interest | 29,504.16 |
| Taxes & Insurance | 2,552.52 |
| Late Fees[6] | 1,610.30 |
| **Total** | **$288,810.00** |

The statement of outstanding indebtedness of the Banco Comercial de Mayaguez reveals the total secured indebtedness[7] as of September 19, 1990, as follows:

| | |
|---|---|
| Principal | $240,000.00 |
| Interests | 56,751.78 |
| **Total** | **$296,751.78** |

The total encumbrances on the real estate property at issue is $585,561.78. The following calculation shows that there is minimal equity in the property:

---

5. Counsel for trustee alleged that the $25,000 deducted from a previous appraisal due to deterioration of the property could be recovered thru insurance. Mr. Canino was asked by the undersigned if the items that caused the deterioration were recoverable thru insurance and he replied in the negative.

6. Although the trustee alleged that the late charges were not covered by the secured instru-

ment, the Court finds that the mortgage note did provide for late charge fees.

7. Although the statement includes attorney's fees, the same will not be included as a part of the secured indebtedness held by Banco Comercial de Mayaguez for the same reasons that they were not included as part of the Bank's secured indebtedness.

Property Value minus $597,990.00
Foreclosure and Sale Costs
Total Debts on Property 585,561.78
Equity in Property 12,428.22

Interests continue to accrue on the debts at the rate of $3,851.80 per month, as testified at the hearing, with no indication of payments forthcoming.

Attorney's fees which can be recoverable because the Bank is an oversecured creditor [8] have not been factored in. The interest and attorney's fees would completely erode the minimal equity in less than three months. The trustee testified at the hearing that he would need at least four months to be ready to sell the property. The depreciating value of the property and the interest accumulating on the Bank's debt, coupled with no cash flow to service that debt and the attorney's fees and other possible fees and costs under Bankruptcy Code section 506(b), result in a decline of the minimal equity such that, realistically, the debtors have no equity in the property. *See, e.g., In re Garsal Realty, Inc.,* 98 B.R. 140, 154 (Bkrtcy N.D.N.Y.1989).

### *Conclusion*

Relief must be granted under 11 U.S.C. § 362(d)(2) in this action to lift the stay against the real estate property at issue as debtors have such a small equity in the property as to constitute no equity at all, and the property is not necessary to an effective reorganization.

Therefore, the Court GRANTS the Bank its request for relief from the automatic stay and allows the Bank to foreclose on the real estate in question herein.

IT IS SO ORDERED.

---

8. Being the value of the collateral greater than the amount of the debt, the Bank's claim is oversecured, and pursuant to 11 U.S.C. § 506(b) as a holder of oversecured claim the Bank may recover out of the collateral reasonable fees provided for in the contract. *In re Hynson,* 66 B.R. 246, 249 (Bkrtcy.D.N.J.1986).