ALPHONSE POULIN *et al. vs.* EULALIE POULIN *et al.*

MARCH 26, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.   This suit in equity is before us on the appeal of the complainants from a decree of the superior court dismissing, on the ground of laches, their bill of complaint after a hearing on bill, answer and replication.   They are the son, daughter and granddaughter, and as such the only surviving heirs, of Hermine B. Poulin, who at the time of her death, intestate, July 1, 1904, was the first wife of Philias Poulin and was the owner in fee of certain real estate, consisting of a parcel of land in Central Falls in this state, and two houses thereon.   This real estate was then subject to a mortgage, which had been made by her and her husband to the Franklin Savings Bank, securing their promissory note for $3200, and which, together with the note, was at her death held by the Slater Trust Company.

Apparently the complainants, unless their rights have been lost by laches, are now, as her successors in interest, the owners of all the title which Hermine B. Poulin had at her death in that real estate, except so far as such title has been terminated or altered by the following facts, which were substantially alleged in the bill of complaint and were admitted by the respondents to be true or were proved by the evidence.   Less than two years after the death of Hermine, Philias Poulin, who then held a life interest in this real estate by right of curtesy, allowed a default to occur in the performance of the conditions of the mortgage, in consequence of which the Slater Trust Company, in accordance with the power of sale, sold the real estate at auction to Philias Poulin for $2970; and for that sum conveyed it to him by a mortgagee's deed, which was duly recorded on March 21, 1906. He continued to hold the legal title to the real estate, or the equity of redemption therein, until his death on August 9, 1934.

Evidently as a part of the purchase price at the foreclosure sale, the Slater Trust Company received from him a note for $2700 and a mortgage on the real estate securing the payment of the note. This mortgage was discharged on August 27, 1907, and a new mortgage on the same real estate was made to the Woonsocket Institution for Savings under date of August 26, 1907, and was recorded the next day. It was discharged of record on February 26, 1921.

On December 29, 1910, Philias Poulin married, as his third wife, Eulalie Tougas, who is one of the respondents, the other two being children of this marriage. On April 7, 1923, Philias Poulin mortgaged the real estate to the Credit Union of Central Falls to secure the payment of his note for $3500, of which the unpaid balance was $2450 at the time of his death.

By his will, which was duly admitted to probate, he gave and devised the residue of his estate, including this real estate, as follows: one-third to his widow, the respondent Eulalie Poulin, and the other two-thirds in equal shares to the first two of the complainants, who were his surviving children by his wife Hermine, and the other two respondents, who, as above stated, were children of his by his third wife.

The special relief prayed for in the bill of complaint is that the mortgagee's deed from the Slater Trust Company to Philias Poulin be declared null and void; that the above-mentioned devisees under his will be declared to be trustees of this real estate for the benefit of all the complainants equally and be ordered to convey it to them. There is also a prayer for general relief. The respondents in their answer set up no affirmative defense.

At the hearing in the superior court, besides the above facts alleged in the bill of complaint, the following facts were proved by uncontradicted evidence or agreed upon by the parties. On October 11, 1922, Philias Poulin received from the inspector of buildings of Central Falls a permit to erect a two-tenement house on a part of the land now in question;

and under this permit he built such a house, which Eulalie Poulin testified was finished in June, 1923, and cost around $3000. It may be noted that this month was the second one after the date when he mortgaged all of this real estate to the Credit Union of Central Falls, to secure his note for $3500, as above stated.

. At the hearing in the superior court the respondents, in support of a defense of laches, introduced evidence to show that while the complainants were delaying the bringing of proceedings by them to establish a trust for their benefit in . the property involved in this suit, the situation had greatly changed in such ways as to make it inequitable for them to enforce the rights which they now claim. This evidence was admitted against the objection of the complainants, which was based on the contention that evidence by the respondents in support of a defense of laches was not admissible, because they had not set up such a defense in their answer.

In support of this contention the complainants have cited to us a number of Rhode Island cases in which the general rule has been stated and applied that in an equity suit an affirmative defense cannot be shown by a respondent, unless the facts supporting it appear in the bill of complaint or are set up by way of plea or in an answer. But in none of those cases was the rule applied to laches and the complainants have cited to us no case in which it was so applied.

On the other hand, in *Chase* v. *Chase*, 19 R. I. 523, this court itself suggested, for the first time in the case, that the question of laches was involved. When the case was reargued on that issue, this court in its opinion in *Chase* v. *Chase*, 20 R. I. 202, said that laches is not waived by not pleading it; and at page 206 said: "It is a defense which may be taken at any time."

In *Taylor* v. *Slater*, 21 R. I. 104, this court held that this defense might be taken on demurrer, when laches appeared in the bill. It stated also, on page 106, that it may be taken by plea or answer and then added: "The defense may also

be set up in argument", citing *Chase* v. *Chase,* 19 R. I. 523, *supra,* and another case, in support of this statement.

We are of the opinion that in the instant case the respondents were entitled to introduce any relevant evidence in support of a defense of laches; and that the evidence which was introduced by the respondents on that issue was properly admitted and considered by the justice of the superior court.

After the close of the hearing before him he filed a rescript, in which he found that Philias Poulin suffered the mortgagee's sale to be made, in March 17, 1906, for the purpose of getting the title to the property in question out of his first wife, Hermine, and her heirs and into his own name, and that he recognized the rights of her children in the property by offering two of them money for the transfer of their interests therein after the mortgagee's sale.

But after discussing the evidence as to laches, he found that there had been inexcusable delay by the complainants in enforcing their claims, accompanied by a material change of condition by respondents in reliance on the apparent validity of title in Philias Poulin; that his testimony had been lost because of his death; and that his third wife had given money and services to him for at least eleven years in ignorance of any claim to the property by the complainants. He therefore held that they were guilty of laches and that the bill should be denied and dismissed. The decree appealed from was then entered, denying and dismissing the bill.

At the time of the death of Hermine B. Poulin, July 1, 1904, the first complainant, her son, was thirteen years old; the second complainant, her daughter, was twelve years old; and the third complainant, her granddaughter, was four years. The first complainant testified that in 1910 his father talked to him about the foreclosure sale and offered him $100, for signing off for his mother's share, but the witness refused; and that in 1925 his father told him, in substance, that the real estate involved in this case had been sold by the bank by mortgagee's sale and that the father had

bought it in his own name and would pay the witness $150 for a release.

The second complainant testified, in substance, that in 1913 or 1914, *i.e.*, when she was twenty-one or twenty-two years old, her father had offered her $250, if she would sign a paper for her mother's share in the property; and that she said that she didn't want to take his money. She testified: "I thought we would wait until he was dead to get something of my mother's share." The third complainant became twenty-one years old in 1921. She did not testify and there is no explanation of her delay of thirteen years in bringing suit for the rights now claimed by her in the instant case. The fact that it was brought soon after the death of Philias Poulin indicates that the other complainants, as well as the second one, were waiting for his death before suing for their alleged rights, intending to sue then, if they were not satisfied with the shares of this property which they would then receive.

It is a well-settled rule in this state, laid down in *Chase* v. *Chase,* 20 R. I. 202, *supra,* at page 204, that mere delay in bringing suit is not laches, unless during the period of delay "the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced." It held that such delay, with knowledge of rights and with such change in the condition of the other party, "becomes inequitable and operates as an estoppel against the assertion of the right." This court then added: "The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes, but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief." See also *Caswell* v. *Bathrick,* 53 R. I. 114, 119, 164 A. 505.

The complainants in the instant case seem to rely strongly, as to the question of laches, on the cases of *Watson* v. *Thompson,* 12 R. I. 466, and *Ball* v. *Ball,* 20 R. I. 520, suits in equity, in each of which the complainant or complainants

claimed, through a first wife who had died intestate, the equitable title to certain real estate in which her surviving husband had at least a life estate by the curtesy; and his second wife and his issue by this second wife were respondents. In each the suit was not brought until after a long delay and after the husband had died intestate; and the defense of laches was not sustained.

In the former of these cases the administrator of his estate was also a respondent and the defense of laches was only urged in behalf of his creditors. At page 472 of the opinion the court said that they supposed that during the husband's life "the complainant, though he could not have sued for possession, could have maintained a suit to have the resulting trust converted into a legal estate in remainder."

There was no evidence that the creditors had extended credit to the deceased because of a belief by them that he was the sole owner of the real estate in question; and there was no suggestion that if suit had been brought, on the complainant's claim of equitable title, before the death of the surviving husband, the latter's testimony might have militated against the success of the complainant in the suit.

In the latter of the two cases relied on by the complainants in the instant case, the basis of the suit was a deed of the real estate in question directly from the husband to his first wife, and it was held that, while such a deed under the then existing law was a nullity at law, it was "good for the purpose of conveying an equitable estate, when made for a good consideration, or even as a gift, if not in fraud of creditors."

This court held, at page 523, that the complainants' delay until the death of the husband had worked no disadvantage to the respondents, as they were then in no worse condition than they had been, except that it had been suggested that the husband's death deprived them of his testimony. The court then stated: "But it equally deprives the complainants of his testimony. The burden is on the complainants

to prove the deed, and with this fact to be established, the loss, if any, is theirs; for we cannot assume that the father would deny his own act." The court also stated that it did not appear that during the complainants' delay the respondents had done anything by which they suffered a disadvantage.

In that case the complainants were simply asking the court in equity to effectuate the intention of the husband so far as the existing state of the law would permit; and in the former case there was no reason to believe that, if the husband had been still alive when the suit was brought, his testimony would have been damaging to the complainant. But if the complainants in the instant case had brought suit in the husband's lifetime, it is almost certain that he would have resisted it; and his testimony might have been very damaging to them. It is quite possible that it would have shown that the real estate, though standing in his first wife's name at her death, really belonged to him in equity, or would have shown facts that gave his third wife an equitable interest in that real estate.

We therefore are of the opinion that it is not inconsistent with the decisions and reasoning in those earlier cases to hold in the instant case that the death of Philias Poulin before the suit was brought was a weighty reason for finding the existence of laches. It was reinforced by evidence, above mentioned, which indicated that the complainants deliberately postponed bringing suit until his death because they wished to keep on friendly terms with him and to see what they might receive from him at his death, and then to be able to bring suit, without having him to oppose them, if they were not satisfied with what they would receive from him at his death.

Moreover, there was evidence, as pointed out in the rescript of the justice of the superior court before whom the case was heard, that the first respondent, while she was the wife of Philias Poulin, had turned over to him money of her

own, which in fact amounted to $3100, and no part of which was repaid to her. There was evidence that some of this went into the construction of the third house, which he erected on the real estate in question, as above stated; and that he had said that if he was not able to repay to her this money, which she had let him have, he would leave this house to her and their children. He had no money at the time of his death.

It was also shown by the evidence that, when his first wife died, the real estate was subject to a mortgage for $3200, and that when he died, although this third house had been added to the property at a cost of about $3000, the real estate was subject to a mortgage of only $2450.

Our conclusion is that we cannot find that the decision of the justice of the superior court that the complainants were guilty of laches was clearly against the weight of the evidence or was contrary to the law. We therefore must sustain that finding and affirm the decree which was entered in accordance therewith.

It was shown by uncontradicted evidence in this case that the respondent Eulalie Poulin filed against the estate of Philias Poulin a claim based on the money which she turned over to him, as above stated, and which was referred to in the above-mentioned rescript of the justice of the superior court. This opinion and the decision herein are without prejudice to any defense which may have been or may be made against such claim.

The complainants' appeal is denied, the decree appealed from is affirmed and the cause is remanded to the superior court for further proceedings.

*Woolley & Blais,* for complainants.

*Cooney & Cooney,* for respondents.