In re Alfred T. NORATO, Jr. and Carol Norato, Debtors.

HERITAGE LOAN AND INVESTMENT COMPANY, Plaintiff,

v.

Louis A. GEREMIA, Trustee and Alfred T. Norato, Jr. and Carol Norato, Defendants.

Bankruptcy No. 7900460.
Adv. No. 800180.

United States Bankruptcy Court,
D. Rhode Island.

June 4, 1981.

Philip R. DeSano, Providence, R. I., for plaintiff.

Kenneth J. Macksoud, Providence, R. I., for defendants.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on Plaintiff's complaint for relief from the automatic stay[1] in order to foreclose on a mortgage. The Defendants allege that the mortgage deed and promissory note held by the Plaintiff were executed and obtained by the Plaintiff as a result of fraud and misrepresentation. The Defendants also raise the equitable defense of laches.

The evidence in this case is sharply conflicting. The Plaintiff's version of the events, as related through the testimony of the Plaintiff's Chairman of the Board, Joseph Mollicone, Sr., is as follows: Alfred Norato was in default on two unsecured notes held by the Plaintiff for $3,515.00 and $1,330.00, respectively. After numerous requests that Norato make arrangements to cure the defaults on these loans, Norato asked the Plaintiff to make an additional loan to him of $6,900.00, of which he would use $4,845.00 to pay the two earlier notes in full. At this point Mollicone told Norato that a mortgage on the Defendants' property would be a prerequisite to such a transaction. After providing a description of his real estate from which a mortgage deed was prepared, Norato went to the Plaintiff's offices, signed the deed, and brought it home for his wife to sign, which she did. The Plaintiff introduced a check for $6,900.00, which had been given to Norato and endorsed by both Defendants. The two earlier loans were deducted from this amount, and Norato was given the $2,070.00 cash remaining from the loan proceeds. According to Mollicone's testimony, Norato requested that this amount be given to him in cash, rather than a check, because he wanted to pay another loan, but didn't want the other creditor to know where he had obtained the money. Other evidence introduced by the Plaintiff includes: a mortgage deed on the Defendants' property, and signed by them on April 11, 1978, a signed promissory note dated April 11, 1978 for $6,900.00 at 15 percent interest, and a loan disclosure statement for each of the Defendants dated April 14, 1978. The following clause on the disclosure statement has been crossed out in ink.

This Loan is Secured by a Security Agreement of Even Date covering . . . [space for a description].

However, a check box next to the phrase "This Loan is Unsecured" has been left unmarked. The balance on the loan including principal, interest and late charges was $9,298.32 as of the date of the hearing.

Sharply in contrast to this version of the facts is the testimony of Alfred Norato. He maintains that he received no cash as a result of the April, 1978 loan, that the loan was merely to consolidate his two earlier notes with Heritage, and that the $6,900.00 figure represented the total of the principal *and* interest. He disputes the amount listed on the disclosure statement by saying that

---

1. Bankruptcy Code § 362, 11 U.S.C. § 362.

the statement was blank when he affixed his signature to it; a practice he has maintained in dealings with the Plaintiff over a 20-year period. Norato also claims that the mortgage deed dated April 11, 1980 was actually executed by him at an earlier date (late 1977 or early 1978) as proposed consideration for a loan for which he did not qualify. He claims that the deed and a note executed at the same time were not returned to him, but instead were being improperly used by the Plaintiff in the present action.

Glaring ambiguities in the testimony of both of the above witnesses leave the Court unimpressed by the credibility of either. The Court, however, has before it the pivotal and credible testimony of Alfred G. Thibodeau, Esq., a principal of Realty Data, Inc., a firm which does real estate title searches.[2] Mollicone used Realty Data to prepare the title report, mortgage, and note in each loan in which he was involved. Realty Data's records indicate that the firm has done four separate title searches on the Defendants' property. Two searches were done for another bank on July 29, 1974 and June 29, 1976, respectively, in connection with mortgage applications, and another search, done on July 18, 1980, was for Plaintiff's counsel in preparation for this case. The only other search performed by Realty Data concerning the Defendants' property was for the Plaintiff on April 10, 1980. No title search was performed, and therefore no mortgage was drafted for the Plaintiff in late 1977 or early 1978 to support Norato's testimony that he signed the mortgage at that time. Attached to the April, 1980 title search in Realty Data's records is an exact copy of the April 11, 1980 mortgage with the principal sum listed as $6,900.00, which Norato asserts he signed at an earlier date. Since Norato testified that he had requested a $10,000 loan at that earlier time, the $6,900.00 principal listed contradicts his testimony.

By asserting fraud as an affirmative defense, the Defendants have the burden of proof on that issue. *Halpert v. Rosenthal*, 107 R.I. 406, 267 A.2d 730 (1970); *Simeone v. Prato*, 82 R.I. 496, 111 A.2d 708 (1955); 37 Am.Jur.2d, Fraud and Deceit § 437. It is clear from the facts of this case that that burden has not been met.

The Defendants also raise the defense of laches. In support of this contention, they point out that although their bankruptcy petition was filed on December 14, 1979, and April 16, 1980 was established as the deadline for filing complaints contesting dischargeability, the Plaintiff did not press this action until August 5, 1980, three months after the discharge order. However, mere delay in pursuing an action does not constitute laches. The party pleading laches as a defense must demonstrate specific harm or prejudice occasioned by the delay. *Berthiaume v. School Comm. of City of Woonsocket*, 397 A.2d 889 (R.I. 1979); *Poulin v. Poulin*, 60 R.I. 264, 197 A. 878 (1938). The Defendants make no such allegation, and there has been no showing of harm caused by delay.

Finally, the Court concludes, based on all the evidence presented that a valid mortgage does exist between the parties securing a loan in the amount of $6,900.00, at 15 percent interest, that the loan is in default, and that the Plaintiff is entitled to foreclose upon the Defendants' real property.

---

**2.** The Court is aware that Plaintiff's counsel, Philip DeSano, is Mr. Thibodeau's law partner, and an associate of his at Realty Data. The Defendants made no objection to admissibility of Mr. Thibodeau's testimony. However, even if an objection had been voiced, the Court, in its power to determine the admissibility of evidence under Federal Rule of Evidence 104(a), would have allowed the testimony, particularly since Mr. Thibodeau's testimony came mostly from the business records of Realty Data.