**In re BUILDING 62 LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 91–14316 WCH.**

United States Bankruptcy Court,
D. Massachusetts.

Oct. 16, 1991.

Charles Bennett, Boston, Mass., for Bay-Bank Harvard Trust Co.

John Cullen, Boston, Mass., for Debtor.

## DECISION REGARDING MOTION OF BAYBANK HARVARD TRUST COMPANY FOR RELIEF FROM STAY

WILLIAM C. HILLMAN, Bankruptcy Judge.

This matter came before the Court at an evidentiary hearing on the Motion of Bay-Bank Harvard Trust Company ("Bay-Bank"). BayBank requests relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(2) and (d)(1). Building 62 Limited Partnership ("Debtor") objects to the requested relief and states that the property in question, Building 62, is necessary for an effective reorganization.

The Debtor is a limited partnership with one general partner and five limited partners. It is the lessee under a 65–year lease with the Boston Redevelopment Authority ("BRA") of a leasehold interest in the property known as Building 62 in the Charlestown Navy Yard. On July 8, 1988 BayBank advanced $4,350,000.00 to the Debtor for the purposes of renovating Building 62. As security for the loan, the Debtor granted to BayBank a Construction Leasehold Mortgage, Security Agreement, and Assignment (the "Mortgage") with respect to its leasehold interest. The loan is also secured by an assignment of the subleases between the Debtor and the tenants of Building 62.

On January 1, 1990, the Debtor entered into a five year lease with the Massachusetts General Hospital ("MGH"). MGH occupies 70% of Building 62. BayBank further agreed to advance $1,650,000.00 to the Debtor on May 2, 1990 for the purposes of fitting-out the area to be occupied by MGH. Prior to the second advance, the Debtor and BayBank attempted to restructure the loan. These negotiations were not successful. On February 15, 1991, MGH began to withhold rent due to the Debtor's failure to reimburse MGH for tenant improvements.

On May 8, 1991, BayBank notified the debtor that, pursuant to the rights provided in the Mortgage, it was taking possession of Building 62. BayBank hired Congress Realty to manage Building 62. On May 17, 1991, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code. BayBank filed a Motion for Relief From the Automatic Stay on May 28, 1991. The Debtor timely objected to the Motion. As of this date, the Debtor has not filed a plan of reorganization.

At a hearing on September 16, 1991, the Debtor explained the provisions of its proposed plan of reorganization. The general partner of the Debtor stated that by October 15, 1991 MGH would resume rental

payments because MGH has recouped the expenses it has incurred to make tenant improvements. According to its expert, Gerald Katz, the Debtor intends to use some of this income to develop a marketing plan to attract new tenants to fill the 30% of the building that is presently vacant. The Debtor hopes to have the building 90% occupied within eight to twelve months. Because the Charlestown Navy Yard is currently under a BRA development plan, Katz expects that the Debtor will be able to rent out the space. The Debtor, he stated, has not been able to rent out the space in the months since the filing only because the Debtor does not have possession of the building. The Debtor has been attempting to lease Building 62 since July of 1988.

Mr. Katz stated at the hearing that if the spaces are leased, the value of Building 62 will increase. The expenses, he said, will not so increase. Because of this increased value, the Debtor expects to attract investors to the project. These investors will receive a substantial equity interest in the partnership. The Debtor stated that the limited partners will voluntarily give up their current equity position to further the reorganization.

Due to the increase in value of the property after it is fully leased and the additional funds received from an investor, the Debtor also anticipates being able to procure a mortgage of $2.8 million. With the mortgage and the money from the investors, the Debtor expects to pay BayBank's secured claim of $3.4 million upon confirmation. Additionally, the new loan and additional monies will fund the plan and pay a dividend to the unsecured creditors.

According to this plan, BayBank will hold an unsecured deficiency claim. The claim will be far greater than the other unsecured claims. Nevertheless, the Debtor states that the Bank will not be treated unfairly because all unsecured creditors will receive a dividend. The Debtor intends to place the unsecured claims of BayBank, the trade creditors, and the limited partners into separate classes. Having three classes, the Debtor expects at least one vote in favor of the plan.

The Debtor lastly explains that the plan, in the event that any of the partners retain an interest in the Debtor, will not violate the "absolute priority rule" because it will fall under the "new value" exception.

## DISCUSSION

A party is entitled to relief from stay under 11 U.S.C. § 362(d)(2) if the debtor does not have any equity in the property and the property is not necessary to an effective reorganization. The burden is on the creditor to establish that the debtor does not have any equity in the property. § 362(g). After the creditor establishes the lack of equity, the burden of proof then shifts to the debtor to show that the property is necessary for an effective reorganization. *Id.*

█ The debtor's burden of proof to show that the property is necessary for an effective reorganization, depends upon the point in time when the debtor is asked to present the prospects for reorganization. *United Savings Ass'n v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 375–376, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988). If the debtor is required to establish the prospects for an effective reorganization at an early stage in the proceedings the burden on the debtor is not as great as it would be in the later stages of the proceedings. *In re Wasserman,* 122 B.R. 839, 844 (Bankr.D.Mass.1991). This principle is not the case, however, if within the exclusive period to file a plan the debtor lacks any realistic prospect of effective reorganization. *Timbers,* 484 U.S. at 375–376, 108 S.Ct. at 632.

█ The parties agreed at the hearing on September 16, 1991 that the value of the property is $3.4 million. BayBank's claim is $5,767,086.07 plus accrued interest. Accordingly, the debtor has no equity in the property. The issue before the Court, therefore, is whether the debtor has met his burden of proof in showing that the property is necessary for an effective reorganization.

The Supreme Court has stated that what § 362(d)(2)(B)

... requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means ... that there must be a reasonable possibility of a successful reorganization within a reasonable time.

*United Savings Ass'n v. Timbers of Inwood Forest Associated Ltd.,* 484 U.S. 365, 375–76, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988) (emphasis provided).

Based on the language of *Timbers* and cases in this District, this Court will apply the *Timbers* "feasibility" test. *In re North Carver Pine Corporation,* 69 B.R. 616, 620 (Bankr.D.Mass.1987); *In re Park West Hotel Corp.,* 64 B.R. 1013, 1023 (Bankr.D.Mass.1986); *In re Jug End in Berkshires, Inc.,* 46 B.R. 892, 902 (Bankr. D.Mass.1985).

There are few cases in this district which address the "feasibility" test. In one, the debtor failed the test because it did not present that which the court determined was necessary to reorganize, namingly, any purchasers or investors willing to buy or invest in the property. *In re Jug End in Berkshires,* 46 B.R. 892, 902 (Bankr. D.Mass.1985). In another, the court found that the debtor met the test not because it met the requirements of § 1129 [1], rather, that it showed a reasonable possibility of meeting the requirements of that section. *In re Ledgemere Land Corp.,* 125 B.R. 58, 65 (Bankr.D.Mass.1991). For the purposes of § 362(d)(2)(B), another court held that the plan "must avoid statutory flaws that would prohibit confirmation ... the debtor

must prove that the things which are to be done after confirmation can be done as a practical matter." *In re Wasserman,* 122 B.R. 839 (Bankr.D.Mass.1991).

In a case factually similar to this case, the court provided the following list of requirements that the debtor needed to demonstrate in order to meet its burden under § 362(d)(2)(B):

1.  The debtor must be moving meaningfully to propose a plan;
2.  The plan must provide that the lender's allowed secured claim would be valued and payable from the debtor's net operating income generated by its property or the ability to propose a plan based on the infusion of new capital, sale, or other viable means;
3.  The plan the plan must have a realistic chance of confirmation;
4.  Without deciding the issue with the same scrutiny as a confirmation hearing, the debtor's proposed plan must not be obviously unconfirmable;
5.  The reorganization must occur in a reasonable period of time. In this regard the factors to look at are:
    a.  the negotiations among the parties;
    b.  the amount of time that the debtor has been in possession and operating the business;
    c.  the length of time since the expiration of the exclusivity period.

*In re Ashgrove Apartments of DeKalb County Ltd.,* 121 B.R. 752 (Bankr.S.D.Ohio 1990).

This Court recognizes, as did the court in *Ashgrove Apartments,* that a list such as the one above is illustrative and not all-

---

1.  11 U.S.C. § 1129 states in part:

    (a) The court shall confirm a plan only if all of the following requirements are met:
    (1) The plan complies with the applicable provisions of this title ...
    (3) The plan has been proposed in good faith and not by any means forbidden by law ...
    (7) With respect to each impaired class of claims or interests—
    (A) each holder of a claim or interest of such class ... accepted the plan; or ... will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not

    less than the amount that such holder would receive ... if the debtor were liquidated ...
    (B) if section 111(b)(2) applies ...
    (10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by an insider ...
    (b)(1) ... the court on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly ... with respect to each class of claims or interests that is impaired ...
    *Id.*

inclusive. The factors are meant to provide an outline of considerations.

The debtor in the case at bar filed for reorganization on May 17, 1991. As the exclusivity period has only recently expired, this Court will apply a more lenient standard. *In re Wasserman*, 122 B.R. 839, 844 (Bankr.D.Mass.1991). Nevertheless, the Debtor has failed to meet its burden.

Under *Ashgrove*, the Court must first look whether the Debtor is moving meaningfully to propose a plan. The Debtor explained that it is moving towards a plan but that there are still many conditions to be met. The Debtor first relies on the renewal of the rental income from MGH. It does not have confirmation from MGH that the rent is forthcoming. Nonetheless, with this unassured income, the Debtor proposes to begin a marketing plan to attract new tenants. As a result of the marketing plan, it expects that it will lease out the remaining 30% of its building within the next six to twelve months. While the Court appreciated the Debtor's testimony regarding the development plans in the Navy Yard, it still must take into consideration the same testimony that described the current 17% vacancy rate in Boston, the arrival of two new vacant office buildings on the horizon, and the fact that the Debtor has been attempting to lease out the space for over two years.

The Debtor expects that if it leases 90% of the building, the overall value of the building will increase to $4,100,000.00. The increased occupancy, according to the Debtor, will not result in increased expenses. With a higher occupancy rate, it also anticipates the arrival of a new investor. The Debtor stated that, although an investment in the Debtor would be risky, it would be able to entice a new investor because of the increased value and by offering the investor equity in the partnership. The Debtor made only vague references to possible investors and did not present any investors to the Court. Accordingly, although the Debtor is moving towards a plan it is not moving meaningfully because there are too many obstacles it must overcome.

In addition, the Debtor must demonstrate that the proposed plan provides that the lender's allowed secured claim would be valued and payable over time from the debtor's net operating income generated by its property or the ability to propose a plan based on the infusion of new capital, sale, or other viable means. The Debtor clearly contemplates the showing of the latter requirement.

The Debtor states that by confirmation, it will have the funds to pay the secured claim of BayBank. The Debtor, however, does not have a commitment for new funds and its ability to procure such funds relies on a host of variables. The Debtor relies on investors without explaining who these investors will be. It does not intend to sell the lease. The Debtor has not produced any other viable means. Accordingly, the Debtor has likewise not met the second requirement of *Ashgrove*.

*Ashgrove* also requires that the plan not be patently unconfirmable. The Debtor, contrary to the assertion of BayBank, is not required to presently demonstrate that the plan will meet all of the confirmation requirements set out in § 1129. *In re Ledgemere Land Corp.*, 125 B.R. 58, 65 (Bankr.D.Mass.1990). The Debtor must, however, show that the plan is capable of being confirmed.

To confirm the plan, the Debtor relies on a future ruling by this Court that the unsecured claims can be placed in separate classes pursuant to *In re Greystone III Joint Venture*, 102 B.R. 560 (Bankr. W.D.Tex.1989), *aff'd In re Greystone*, 127 B.R. 138 (D.C.W.D.Tex.1990). It also relies on a future ruling regarding the absolute priority rule and the "new value" exception. The Court in *Ashgrove* stated that "unsettled legal issues relating to confirmation disputes will not be decided in the context of a relief from stay." *Ashgrove*, 121 B.R. at 757. This Court finds, however, that the Debtor's reliance on favorable rulings on three major issues of law is unwarranted. Such issues outstanding indicate that the plan is, at the present time, unconfirmable.

Lastly, *Ashgrove* requires a showing that the debtor show that the proposed plan can be met within a reasonable period of time. In this regard, the court found telling the presence or absence of negotiations among the parties, the presence or absence of good faith efforts by the parties to reach a consensual solution, and the length of the case. The Debtor has been in Chapter 11 since May. There has been an absence of negotiation between the principal parties in interest and an absence of the parties to reach a solution in good faith. Many of the contingencies, according to the Debtor, are not going to be realized for eight to twelve months. Accordingly, the Debtor has not met the requirements as set forth in *Ashgrove.*

In *Wasserman,* the court reviewed a proposed plan that likewise had a low value for a secured claim and both an expectation of increased value due to new leases and subsequent refinancing. The court found that these elements indicated that the plan was clearly unconfirmable. The court denied relief, however, because new leases were substantially in progress, the plans of reorganization were the subject of negotiation, and the debtors were sophisticated business people. *Wasserman,* 122 B.R. at 844. The court conditioned the continuing stay for 75 days in the event that the debtor did not obtain confirmation. In the case at bar, new leases are speculative and there is no negotiation regarding a plan. Therefore, even a conditioned stay is unwarranted.

The Debtor has made a valiant attempt to meet its burden but unfortunately, rather than presenting the Court with a reasonable prospect of reorganization, it demonstrated what is commonly known as terminal euphoria. On that basis the Debtor has failed to meet its burden under § 362(d)(2)(B). The Court will not address the alternate grounds for Relief set forth in BayBank's Motion. The Motion for Relief from Stay is granted.