In re Robert L. GRAVES Jr.
and Shirley H. Graves.

COMPASS BANK FOR SAVINGS,
Appellant,

v.

William G. BILLINGHAM, Chapter
7 Trustee, Robert L. Graves, Jr.,
Shirley H. Graves, Appellees.

BAP No. MB 96–081.

United States Bankruptcy Appellate Panel
of the First Circuit.

Sept. 30, 1997.

William J. Hanlon, Goldstein & Manello, P.C., Boston, MA, on brief for appellant.

Wayne S. Henderson, Boston, MA, on brief for Chapter 7 Trustee.

Alfred C.W. Daniels, Oak Bluffs, MA, on brief for appellees.

Before GOODMAN, VAUGHN, and LAMOUTTE, Bankruptcy Judges.

PER CURIAM.

Compass Bank for Savings, successor in interest to Martha's Vineyard National Bank, has appealed from an order of the United States Bankruptcy Court for the District of Massachusetts denying its Request for Declaration that Real Property is not Property of the Estate Subject to the Automatic Stay, or Alternatively, Motion for Relief from Stay. The Bankruptcy Appellate Panel has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. We review the bankruptcy court's findings of fact for clear error and we review its conclusions of law *de novo*. FED. R.BANKR.P. 8013; *Piccicuto v. Dwyer*, 39 F.3d 37, 40 (1st Cir.1994). For the reasons discussed below, we affirm the bankruptcy court's decision.

## FACTS

The facts are not disputed by the parties. On March 12, 1991, Robert L. Graves, Jr.

and Shirley H. Graves filed a voluntary Chapter 11 petition. On their schedules, they listed real property located on Uncas Avenue in Oak Bluffs, Massachusetts. The Debtors purchased this property in 1984 and mortgaged it with Compass Bank's predecessor-in-interest. The Debtors ran a retail gasoline station, a bait and tackle shop, and a small machine shop on the property. In 1989, it was discovered that the property was severely contaminated, apparently from the leakage of gasoline from underground storage tanks. These tanks were owned not by the Debtors, but by R.M. Packer Co., Inc. ("Packer"). Packer subsequently removed the leaking tanks which resulted in the loss of the Debtors' primary source of income. In addition, the Debtors found themselves strictly liable as owners to remediate the contaminated property under Massachusetts General Laws Chapter 21E.

About two months after the Debtors filed bankruptcy, Compass Bank's predecessor-in-interest sought relief from the automatic stay with respect to the gas station property and two other parcels mortgaged to the Bank. The Debtors opposed the motion, and on June 18, 1991, they entered into a stipulation with the Bank which was approved by the bankruptcy court on June 20, 1991. The stipulation provided that the Debtors would pay the outstanding postpetition arrearage on the Bank's two notes, including late fees, the Debtors would perform all other obligations imposed under the loan and mortgage documents, the Debtors would maintain insurance policies on the mortgaged premises, the automatic stay would remain in effect unless the Debtors defaulted under the stipulation or until further order of the court, and upon the failure of the Debtors to comply with the terms of the stipulation, the Bank "without the necessity of a further hearing" would be deemed to have relief from the automatic stay. Shortly thereafter, the Debtors defaulted and the Bank proceeded to foreclose on another of the Debtors' property, without applying to the bankruptcy court for relief from the automatic stay. Although, pursuant to the stipulation, the Bank could have foreclosed on the gas station property, the Bank admits in its reply brief that it did

not foreclose because the property was contaminated.

Also in 1991, the Debtors filed suit in state court against Packer alleging violations of Massachusetts' environmental protection statute and its unfair and deceptive acts or practices statute as well as asserting counts for negligence, nuisance, and breach of contract. Although the Debtors and their counsel requested that the Bank help fund either the cleanup of the property or the litigation against Packer, the Bank was unwilling to fund either.

On February 17, 1993, the Debtors' bankruptcy case was converted to Chapter 7. Shortly thereafter, William G. Billingham was appointed trustee. On April 26, 1993, the Trustee filed a report of no distribution, on July 13, 1993, the bankruptcy court issued an order discharging the Debtors, and on July 19, 1993, the case was closed. The Trustee filed a motion to reopen the case on July 28, 1993 in order to administer an asset, specifically, the Debtors' lawsuit against Packer. The court granted the motion and the case was reopened on July 30, 1993. The court did *not* limit the reopening to the administration of the lawsuit. No further substantive action was taken in the bankruptcy case until October 9, 1996, when the Bank filed its Request for Declaration that Real Property is not Property of the Estate Subject to the Automatic Stay, or Alternatively, Motion for Relief from Stay. This action was taken only after the Bank learned that the Trustee recovered a judgment in the amount of $991,281.10 against Packer for its negligence, breach of contract, and unfair and deceptive acts.

Pursuant to the state court order, the judgment amount was to be paid into an escrow fund to be administered by the bankruptcy trustee, and after payment of attorneys' fees and costs, was to be used solely for the purpose of cleaning up the gas station property. Only after completing remediation could the remaining money be distributed by the Trustee in accordance with the Bankruptcy Code. Both parties appealed the state court order, and the appeal is pending.

## DISCUSSION

The Bank made three arguments to the bankruptcy court in support of its motion. First, the Bank argued that it was entitled to relief from the automatic stay pursuant to the 1991 stipulation. Second, the Bank argued that the gas station property was abandoned to the Debtors when the case was closed in July 1993 and was therefore no longer subject to the automatic stay despite the reopening of the Debtors' case only eleven days after its closing. Third, the Bank argued that it was entitled to relief from the automatic stay because the Debtors have no equity in the property. The bankruptcy court ruled against the Bank on all three counts.

The bankruptcy court held that the waiver contained in the 1991 stipulation between the Debtors and the Bank (in which the Debtors agreed that upon their failure to comply with the stipulation the Bank would have relief from the automatic stay "without the necessity of a further hearing") was not binding on the Chapter 7 Trustee. In addition, the bankruptcy court stated that the waiver "may not even be binding on a debtor given a change of circumstances." As support for its holding, the court cited *In re Powers,* 170 B.R. 480 (Bankr.D.Mass.1994), in which Judge Hillman held that a prepetition waiver of the protection of the automatic stay is not self-executing and does not preclude either third parties or the debtor from contesting the granting of relief. Although *Powers* involved a prepetition waiver of opposition to relief from the automatic stay, we find its rationale equally applicable to the facts of this case.

In addition, we find that the stipulation is not binding on the Debtors or the Chapter 7 Trustee given the change in circumstances that has occurred in this case. Since the stipulation was signed in 1991, the Trustee has obtained a $991,281.10 judgment requiring the cleanup of the Debtors' gas station property, which has drastically altered the landscape of the case. What was once a potentially worthless piece of property due to environmental contamination may now be a valuable asset of the bankruptcy estate. Not until the Trustee obtained the judgment

in 1996 did the Bank express any interest in the property, even though, pursuant to the stipulation, the Bank had grounds in 1991 to obtain relief from the automatic stay because of the Debtors' default. In the years prior to the judgment, the Bank refused to take action to repossess the property, to clean up the property, or to fund any part of the litigation against Packer. The Bank's only substantive action in the bankruptcy case since 1991 has been the filing of its motion requesting a declaration that the property is not property of the bankruptcy estate or, alternatively, that the Bank is entitled to relief from the automatic stay, which it filed shortly after the issuance of the state court judgment in 1996.

■ Bankruptcy courts as courts of equity have the power to look through the form to the substance of a transaction and may fashion new remedies where those in law are inadequate. *In re Hitt*, 137 B.R. 401, 405 (citing 11 U.S.C. § 105(a) and *In re Global Western Dev. Corp.*, 759 F.2d 724, 727 (9th Cir.1985)). In his *Powers* decision, Judge Hillman explained "if there is a radical and new development which drastically changes the economic picture and the value of the collateral ... it is clear that this Court may grant additional relief to the debtor...." *Powers*, 170 B.R. at 484 (quoting *B.O.S.S. Partners I v. Tucker (In re B.O.S.S. Partners I)*, 37 B.R. 348, 351 (Bankr.M.D.Fla. 1984)). In this case, we find that the bankruptcy court acted properly in finding the stipulation unenforceable as its enforceability would be inequitable given the changed circumstances.

■ The Bank's second point on appeal is that the bankruptcy court erred in holding that the property, which was technically abandoned upon the case's closing on July 19, 1993, came back into the estate upon the case's reopening on July 30, 1993. The Bank argues that the property did not become a part of the estate of the reopened case and is not subject to the automatic stay. Pursuant to 11 U.S.C. § 554(c), "any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350

of this title." The parties do not dispute that upon the closing of the bankruptcy case on July 19, 1993, the gas station property was abandoned to the Debtors as an unadministered asset. The issue before the bankruptcy court and before us on appeal is what happens to an unadministered asset upon the reopening of a case where the case is reopened in response to a motion by the trustee in order to administer an asset, a lawsuit related to the debtors' real property, which was improperly reported on the debtors' schedules.

Pursuant to 11 U.S.C. § 350, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." This section of the Bankruptcy Code does not indicate what should happen to property technically abandoned pursuant to section 554(c) upon reopening. The bankruptcy court took the position that the property springs back into the estate. We find no error in this conclusion.

Some bankruptcy courts have held that section 554(c) gives them the power to modify or revise any technical abandonment by simply ordering it because section 554(c) specifically provides that *"unless the court orders otherwise,* any property ... not otherwise administered ... is abandoned to the debtor...."  11 U.S.C. § 554(c) (emphasis added); *see In re Shelton,* 201 B.R. 147, 155 (Bankr.E.D.Va.1996). Other courts have held that technical abandonments may be revoked if the Trustee has not made an intelligent, informed decision with respect to the abandonment, or the abandonment was unintentional or the result of inadvertent error. *See In re Shelton,* 201 B.R. at 155. Still other bankruptcy courts find that when a case is reopened, the original case is revived, effectively negating any technical abandonment under section 554(c). *See In re Shelton,* 201 B.R. at 155; *Figlio v. American Management Services, Inc. (In re Figlio)*, 193 B.R. 420, 424 (Bankr.D.N.J.1996) (finding that the term "closed" means "finally closed"). We find it important that the bankruptcy judge did not limit the purpose for which the reopening was taking place when he reopened the case. For that reason

we agree with the third approach and find that the property in question became part of the bankruptcy estate, subject to the automatic stay, upon the reopening of the case on July 30, 1993. We find this an appropriate result especially given the short interval during which the case was actually closed.

The third issue on appeal is whether the bankruptcy court erred in denying the Bank relief from the automatic stay. Although the bankruptcy court summarily found no cause under section 362(d)(1) for lifting the stay, the Bank has not raised this issue on appeal. With respect to section 362(d)(2), the bankruptcy court agreed that the property was not necessary to an effective reorganization because the case is in Chapter 7. However, the bankruptcy court was unable to determine whether the Debtors had equity in the property given the stale appraisals before the court and the future remediation of the property. The Bank argues that the bankruptcy court erred in failing to find a value for the property, in failing to find that the property lacked equity, and in failing to grant it relief under section 362(d)(2).

■ Pursuant to 11 U.S.C. § 362(g)(1), the party seeking relief from the automatic stay has the burden to establish that the debtor does not have any equity in the property. *See In re Building 62 Ltd. Partnership,* 132 B.R. 219, 221 (Bankr.D.Mass.1991); *In re Kertennis,* 40 B.R. 895, 898–99 (Bankr.D.R.I. 1984); *Great Am. Credit Corp. v. Tursi (In re Tursi),* 9 B.R. 450, 453 (Bankr.E.D.Pa. 1981). After the party seeking relief establishes lack of equity, the burden of proof shifts to the debtor to show that the property is necessary for an effective reorganization. 11 U.S.C. § 362(g)(2).

■ In the present case, the bankruptcy court held a non-evidentiary hearing on the motion for relief on December 6, 1996. Prior to the hearing the Bank had submitted a copy of an appraisal valuing the property as of September 27, 1994 at $122,000 in an uncontaminated state. The Bank had also attached to its motion for relief an affidavit of an officer of the Bank who indicated that as of March 1, 1996, the total due under the notes was $252,078.85, consisting of $145,-318.96 in principal, $751.21 in late fees, and

$106,008.68 in interest, plus costs and attorneys' fees. The officer also indicated that interest accrues at the rate of $40.29 per day, or almost $15,000 per year. The affidavit provided no information regarding outstanding real estate taxes or other charges against the property. At the hearing, counsel for the Bank indicated that outstanding real estate taxes amounted to approximately $15,000. In addition, while it appears from the record that the Debtors did not attach their 1988 appraisal of the property to their objection nor submit it into evidence, the appraisal, which gives a value of $330,000 for the property in an uncontaminated state, was discussed at the hearing.

■ As explained above, the Bank had the burden of establishing the lack of equity in the Debtors' property. We find no error in the bankruptcy court's conclusion that the Bank did not sustain this burden given the complete lack of sworn testimony by a qualified appraiser as to the present value of the property. The value of property at the time a motion for relief is heard is the issue facing a bankruptcy court in a motion for relief, not the value of the property two years earlier. *Kertennis,* 40 B.R. at 898; *Tursi,* 9 B.R. at 452 (discounting the testimony of a witness who gave a valuation based on an examination of the property made two years prior to the trial). Without adequate evidence as to the present value of the property, the bankruptcy court, quite expectedly and properly, was unable to determine if equity in the property existed.

■ In addition, we question whether the Bank should be entitled to assert a claim for interest, which at the time of the December 6, 1996 hearing amounted to $117,330.17, and whether such a claim for interest should enter into any equity calculation. The Debtors and the Trustee have raised the equitable doctrine of laches. "Laches operates as a bar upon the assertion of a party's rights when that party has unreasonably delayed in asserting its rights so as to cause prejudice to the adverse party." Lake *Caryonah Improvement Ass'n v. Pulte Home Corp.,* 903 F.2d 505, 509 (7th Cir.1990) (*citing Schroeder v. Schlueter,* 85 Ill.App.3d 574, 41 Ill.Dec. 12,

407 N.E.2d 204 (1980)). As explained by the First Circuit, in applying laches, a court must examine whether the plaintiff's delay in bringing its claim was unreasonable and whether the defendant was prejudiced by the delay. *McKinney v. Waterman S.S. Corp.*, 925 F.2d 1, 3 (1st Cir.1991) (*citing Puerto Rican–Am. Ins. Co. v. Benjamin Shipping Co., Ltd.*, 829 F.2d 281, 283 (1st Cir.1987)).

> [Laches] has been aptly referred to as the doctrine of stale demand and is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights under circumstances where he might have earlier asserted such rights in the exercise of due diligence. This lack of diligence must also be reflected in some resulting inequity to the adverse party such that it would be unfair to allow maintenance of the claim, [and] in cases where property is in dispute, because of some change in the condition or relation of the property and the parties.

*Lake Caryonah Improvement Ass'n,* 903 F.2d at 508 (citing *Schroeder v. Schlueter*, 85 Ill.App.3d at 577, 41 Ill.Dec. at 15, 407 N.E.2d at 207). Mere delay in pursuing an action does not constitute laches. *Heritage Loan and Invest. Co. v. Geremia (In re Norato)*, 11 B.R. 480, 482 (Bankr.D.R.I.1981).

 In this case, the Bank was entitled to relief in 1991 pursuant to its stipulation with the Debtors. The Bank was aware of this right as it foreclosed on another of the Debtors' properties during that time. However, the Bank did not seek to obtain relief from the automatic stay and foreclose upon the gas station property until October 1996, only a few months after the state court issued its judgment of nearly a million dollars, and more than *five years* after the Debtors defaulted. Clearly, the Bank "slept on its rights" and unreasonably failed to exercise due diligence in asserting its right to relief with respect to the Debtors' property. The Debtors and the Trustee have been prejudiced by the Bank's years of inaction. Using the Bank's figure, with interest accruing at the rate of almost $15,000 per year, the Debtors have been charged more than $80,-000 in interest since 1991. It would be inequitable to permit the Bank to charge the Debtors interest attributable to the Bank's inaction and then allow the Bank to use these increased interest figures to show that the Debtors have no equity in the property.

In addition, we note that the Trustee would be prejudiced if the Bank were granted relief from the automatic stay at this point given the change of circumstances with respect to the property. With the large state court judgment, the Trustee intends to pay $275,000 in cleanup costs, $240,000 in legal fees, and the balance, about $450,000, to the Debtors' creditors. Again, we find that it would be inequitable to grant the Bank relief so that it may reap the benefit of the Trustee's efforts. Given these factors, we affirm the bankruptcy court's decision denying the Bank relief from the automatic stay.

### CONCLUSION

For all of the above reasons, the decision of the bankruptcy court is AFFIRMED.