In re Stuart C. BRINLEY, Debtors.

No. 01–30824.

United States Bankruptcy Court,
W.D. Kentucky.

Aug. 17, 2006.

Richard A. Schwartz, Louisville, KY, for Debtors.

## MEMORANDUM

DAVID T. STOSBERG, Bankruptcy Judge.

This matter comes before the Court on the Motion to Have Unencumbered Equity

in Real Estate Commonly Known as 1007 Johnson Farm Road, Louisville, Kentucky 40245 Preserved for the Benefit of Bankruptcy Estate for the Unsecured Creditors Under 11 U.S.C. Section 551 filed by LPP Mortgage, Ltd. (hereinafter "LPP"), an unsecured creditor. While the Chapter 7 Trustee (hereinafter "Trustee"), William Lawrence, filed no formal response to the motion, he orally joined in the motion advocated by LPP. The debtor opposed the motion. At the last hearing on the motion held July 25, 2006, the parties waived a formal evidentiary hearing in this matter and agreed that the Court could render its decision based upon the record before it. The Court enters the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bank. P. 7052.

## FINDINGS OF FACT

1. The debtor commenced this Chapter 7 bankruptcy case on February 15, 2001.

2. On April 9, 2001, the debtor moved to avoid the judgment lien held by PNC Bank, Kentucky, Inc., pursuant to Section 522(f) of the Bankruptcy Code. LPP is the successor by assignment of PNC Bank's judgment lien. LPP objected to the motion to avoid.

3. The parties stipulated the following facts with respect to the motion to avoid: 1) the property in question was valued at $280,000; 2) there is a $180,000 undisputed first mortgage on the property; 3) second in priority, LPP held a judgment lien of $112,418.35; 4) junior to LPP's judgment lien, there is a $80,345.09 consensual mortgage on the property; 5) the debtor claimed a $6,000 homestead exemption.

4. While the motion to avoid was pending, on July 24, 2001, the Trustee filed a motion to close the bankruptcy case. On November 28, 2001, the Trustee filed his Final Report.

5. On May 24, 2002, this Court entered its decision granting in part and denying in part the debtor's motion to avoid. This Court held LPP's lien was avoided in the amount of $18,418, leaving LPP with a judgment lien of $94,000 on the property. The debtor appealed this decision to the United State District Court on May 31, 2002.

6. While the appeal was pending, on October 21, 2002, in accordance with standard procedure, a Final Decree was entered, the Trustee was discharged, and the bankruptcy case was closed. With the closing, the debtor's properly scheduled, unadministered assets were abandoned back to the debtor by operation of 11 U.S.C. § 554(c).

7. On April 2, 2003, the District Court issued its opinion reversing this Court. Judge Simpson held LPP's judgment lien was avoided in its entirety.

8. Both parties appealed to the Sixth Circuit and on March 22, 2005, the Sixth Circuit reversed the District Court holding that LPP's judgment lien survived in the amount of $13,654.91. Thus, LPP's judgment lien was avoided to the extent of $98,763.44. The Circuit then remanded the case for further proceedings as necessary.

9. Due to the mandate from the Sixth Circuit, on April 29, 2005, this Court set aside the Final Decree and reopened the bankruptcy case.

10. On June 22, 2005, this Court entered an order on the debtor's motion to avoid LPP's judgment lien

in accordance with the mandate from the Sixth Circuit.

11. On August 2, 2005, the Court entered a second Final Decree, discharging the Trustee, and re-closing the bankruptcy case.

12. On October 20, 2005, LPP filed a Motion to Reopen the bankruptcy case and the instant motion currently before the Court. An order reopening the case was entered October 21, 2005.

13. LPP now seeks an order finding the unencumbered equity created by the avoidance of its judgment lien be preserved for the bankruptcy estate pursuant to the provision of 11 U.S.C. § 551.

14. On June 20, 2006, the debtor filed an objection to LPP's motion arguing that § 551 is inapplicable as that section only applies to property of the estate, and that the property in question here is not property of the estate due to the abandonment triggered by the closing of the bankruptcy case.

15. At the hearing on LPP's motion, it became clear the issue to be decided is whether the technical abandonment under § 554(c) is irrevocable, thus making § 551 inapplicable as the debtor contends or whether the § 554(c) abandonment is revocable making § 551 applicable as LPP contends. If LPP is correct, the value of the lien avoided, approximately $98,763, is preserved for the bankruptcy estate, which upon proper sale by the Chapter 7 Trustee, would result in an additional distribution to unsecured creditors. If the debtor is correct, the value of the lien avoided is not preserved for the bankruptcy estate, but instead the junior lien-holder simply rises up to fill the void created by the avoidance of LPP's judgment lien and any other "left-over" equity falls to the debtor.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) and venue is proper under 28 U.S.C. § 1409(a). The parties have submitted to the jurisdiction of this Court.

■ This decision concerns the application of 11 U.S.C. § 551 (entitled "Automatic preservation of avoided transfer"), which states that "[a]ny transfer avoided under section . . . 522 . . . of this title . . . is preserved for the benefit of the estate but only with respect to property of the estate." The debtor claims that since this case was closed, pursuant to 11 U.S.C. § 554(c) the property in question was abandoned and no longer constituted property of the estate. Section 554(c) provides that "[u]nless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." As this property was properly scheduled, the debtor argues that after the closing of the case, the property is no longer property of the estate. LPP does not dispute that the property was properly scheduled or that the property was abandoned by the closing of the case. Instead, LPP challenges that such an abandonment is permanent. LPP contends that upon re-opening the case, the abandonment was revoked, thereby re-vesting the property into property of the estate and triggering the application of § 551.

There are basically three types of abandonment that may occur in a bankruptcy case. These types of abandonment are set forth in § 554 of the Bankruptcy Code. The first two types of abandonment are found in § 554(a) and (b). These abandonments take place upon motion of a party, notice and opportunity for a hearing, and, when appropriate, a confirming court order. The third type of abandonment is the type involved in the present situation. It is found in § 554(c) and does not involve a motion, notice and opportunity for hearing, and does not result in an order from the court. Instead, this type of abandonment is automatic at the closing of the case. The abandonment of property of the estate that results from the closing of a case is commonly referred to as a "technical abandonment." (While not completely applicable under the facts of this particular case, the Court also notes that under the Local Rule 9.2, property is deemed abandoned if a no asset report is filed by the trustee and no objections are filed within 30 days of the 341 meeting. As this procedure is analogous to the provisions of § 554(c), the same analysis would be applied.) The critical question to be answered here is the revocability of a technical abandonment.

■ As the debtor correctly pointed out in his objection, a number of cases recognize a general rule that abandonment is irrevocable, even if it is subsequently discovered that the abandoned property had greater value than previously believed. The rationale for the general rule is that once an asset has been abandoned, it is no longer part of the estate and is effectively beyond the reach and control of the trustee. This policy encourages due diligence by the Trustee in determining which assets to administer while also providing the debtor a sense of finality once a case is closed.

■ Notwithstanding the general rule, exceptions to the general rule of irrevocability of a technical abandonment have developed throughout the case law. Indeed, it is almost universally accepted that an abandonment may be revoked in the following situations: (1) where the trustee is given false or incomplete information about the asset by the debtor, or (2) where the debtor fails to list the asset altogether. *Dushane v. Beall,* 161 U.S. 513, 516, 16 S.Ct. 637, 639, 40 L.Ed. 791 (1896); *Catalano v. Comm'r of Internal Revenue,* 279 F.3d 682, 686 (9th Cir.2002); *In re Sutton,* 10 B.R. 737 (Bankr.E.D.Va.1981); *Laroche v. Tarpley,* 4 B.R. 145 (Bankr.M.D.Tenn. 1980).

The question remains, whether a technical abandonment may be revoked when the property is properly listed and the trustee has not been given false or incomplete information. The Court has discovered a number of different approaches taken to this issue. Some courts have held that § 554(c) by its terms allows a court broad power to modify or revoke a technical abandonment once a case is reopened under § 350(b), because a court may simply "order [ ] otherwise." *See Neville v. Harris,* 192 B.R. 825, 832 (D.N.J.1996); *DeVore v. Marshack (In re DeVore),* 223 B.R. 193, 198 (9th Cir. BAP 1998). While this approach may have some technical merit, it is unappealing as it completely eviscerates the policy of finality. Parties may not act with complete disregard to the provisions of § 554(c) and then later come back and simply request the abandonment be revoked. This practice would be unjust to the debtor and would encourage the sloppy handling of cases.

■ Some courts have held that the reopening of a case under § 350(b) automatically revives the original case and negates any technical abandonments. *See Compass Bank for Savings v. Billingham (In*

*re Graves)*, 212 B.R. 692, 695–96 (1st Cir. BAP 1997). This is the approach advocated by LPP. LPP argues that since the case was reopened upon unopposed motion, the technical abandonment is simply revoked. This Court also rejects this approach. Allowing abandoned property to automatically revert to the bankruptcy case simply because a bankruptcy case is reopened would clearly thwart any policy favoring finality and give the trustee the proverbial second bite of the apple. This Court does not believe Congress intended such a perpetual process. Lastly, reopening of a bankruptcy case could happen for a variety of reasons and at a number of times. It would make no sense for property to swing from abandoned to not abandoned each time a bankruptcy case is reopened and then later reclosed.

■ Another approach is the one advocated by the debtor, that technical abandonments of scheduled property known to the trustee are unequivocally irrevocable. *In re Enriquez*, 22 B.R. 934 (Bankr.D.Neb. 1982); *Huntington Nat'l Bank v. Hunter (In re Hunter)*, 76 B.R. 117, 118–20 (Bankr.S.D.Ohio 1987); *In re Atkinson*, 62 B.R. 678, 679–80 (Bankr.D.Nev.1986). While this approach definitely serves the policy of finality, this Court must also reject this approach. The Court does not believe that a technical abandonment, unlike an abandonment by motion with notice and opportunity and court order, is unequivocally final. This approach does not take into consideration inadvertence, excusable neglect, or other equitable considerations. A court should have a limited amount of discretion in deciding whether a technical abandonment should be vacated and set aside. Thus, the issue turns to what standard should the Court apply in deciding this issue.

This Court agrees with the analysis used by the Tenth Circuit in *In re Woods*, 173 F.3d 770 (10th Cir.1999). The Tenth Circuit concluded that in situations such as these, the Court should be guided by the principles set for in Fed. R. Bank. P. 9024, which makes Rule 60 of the Federal Rules of Civil Procedure applicable to bankruptcy matters. This approach provides a certain amount of finality in that abandonments are not automatically revoked upon the re-opening of a bankruptcy case or granted without any limitations or restrictions. Safeguards are in place to protect the debtor against open ended abandonment revocations and the potential subsequent turnover of appreciated property. Finally, it requires parties to act with due diligence, and yet allows some flexibility in situations where relief is appropriate. *See also In re Balonze*, 336 B.R. 160 (Bankr. D.Conn.2006). Rule 60(b) provides as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . , misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Applied to the facts of this case, the Court believes that subsections (1) (based on "mistake, inadvertence, or excusable neglect,"), (5) (based on "prior judgment upon which it is based has been reversed or otherwise vacated,"), and (6) (based on principles of equity, and the windfall to the

debtors and the junior lienholder) all apply. The Trustee's, as well as this Court's, reliance upon well established law regarding priorities and lien avoidance was certainly reasonable at the time the motion to avoid LPP's lien was filed. Under the law as the Trustee understood it at that time, there was no equity in the property for the benefit of the bankruptcy estate. Thus, the Trustee's action in not administering this asset was not the result of mere carelessness, but instead the result of the application of lien avoidance law as it was understood at that time. As later held by the District and Circuit Court, this application was incorrect. Under these circumstances, any "neglect" by the Trustee in not administering this asset was excusable. Additionally, the equities in this case certainly fall in favor of setting aside this abandonment. The debtor filed his motion to avoid LPP's judgment lien because that lien impaired his exemption. Under the Circuit's holding on the lien avoidance issue, that exemption is no longer impaired. It only makes sense that the additional equity created by the lien avoidance go to the bankruptcy estate and not go to the junior mortgage holder whose position was improved by the debtor's actions. Nor should the equity beyond the two mortgages automatically fall to the debtor at the expense of the bankruptcy estate. At the beginning of the case, had the Trustee applied the law as finally decided by the Sixth Circuit, the debtor would have received only his homestead exemption from the sale of the property. Under the scenario as proposed by the debtor, the debtor would enjoy approximately $13,655 in additional equity beyond his homestead exemption. ($280,000–$180,000–$80,345–$6,000 = $13,655). Clearly the equities dictate this windfall go to the bankruptcy estate rather than the debtor.

Finally, the Court will point out that it considers the facts of this case somewhat atypical and does not expect to encounter a factual situation like this again. Nevertheless, the rule set forth above regarding the setting aside of technical abandonments is sound and should apply in this case. This should not be read by the Trustee or any other party as permission or authority to recklessly examine the debtors assets. Indeed, as the debtor correctly pointed out, a strong policy of finality should accompany any abandonment. Simple increases in value of a disclosed asset post closing will not, in and of itself, be sufficient to set aside a technical abandonment. Nor will abandoning a disclosed lawsuit that eventually proves successful be set aside simply because the bankruptcy estate could benefit. Instead, revocation of abandonments will be allowed only in those extraordinary situations where the provisions of Fed. R. Bank. P. 9024 are met and the equities dictate that the abandonment be set aside. *In re Balonze,* 336 B.R. 160, 169 (Bankr. D.Conn.2006). An Order consistent with this Memorandum will be entered this same date.

## ORDER

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the Motion to Have Unencumbered Equity in Real Estate Commonly Known as 1007 Johnson Farm Road, Louisville, Kentucky 40245 Preserved for the Benefit of Bankruptcy Estate for the Unsecured Creditors Under 11 U.S.C. Section 551 filed by LPP Mortgage, Ltd. is **GRANTED.**